FREEMAN *v.* BARNETT.[*]

(Division A.    April 18, 1927.)

[112 So. 161.    No. 26250.]

INSURANCE.    *Heirs of insured in benefit association held entitled to proceeds of policy; husband named as beneficiary having been divorced before insured's death.*

Where husband of insured, named as beneficiary in policy in benefit association, was divorced before insured's death, thus

146 Miss.—54.

taking him out of the class of beneficiaries limited by the association's constitution, the proceeds were payable to insured's heirs, though she did not exercise her right to change beneficiary, and though, had she not named a qualified beneficiary, the insurance would under the constitution have reverted to the association; the husband being treated as having died when he was divorced.

---

*Corpus Juris-Cyc References: Divorce, 19CJ, p. 18, n. 34; p. 180, n. 26; Mutual Benefit Insurance, 29Cyc, p. 107, n. 14; p. 156, n. 82. As to effect of divorce on rights of beneficiary under insurance policy or benefit certificate, see annotation in 3 L. R. A. (N. S.) 478; 39 L. R. A. (N. S.) 370; 14 R. C. L. 1481; 3 R. C. L. Supp. 393.

APPEAL from circuit court of Alcorn county.
HON. C. P. LONG, Judge.

Action by Henderson Barnett, administrator, against Sam Freeman and another. Judgment for plaintiff, and named defendant appeals. Affirmed.

*W. C. Adams,* for appellant.

The divorce has no effect on Sam Freeman's rights to the proceeds of this policy. *Courtois* v. *Grand Lodge, etc.,* 135 Cal. 552, 87 A. S. R. 137; 37 C. J., page 567; *Brown* v. *Powell,* 130 Miss. 496, 93 So. 457; *Sov. Camp, etc.,* v. *Israel,* 117 Ark. 121, 173 S. W. 855; 20 A. L. R., page 961; *Matter of Shanley,* 95 Misc. 427, 160 N. Y. Supp. 733; *Foote* v. *Grand Lodge of Col. K. of P.,* 109 Miss. 119; *White* v. *Brotherhood of A. Yeomen,* 66 L. R. A. 164; *Conn. Mut. Life Ins. Co.* v. *Shaeffer,* 24 L. Ed. 251; *Begley* v. *Miller,* 137 Ill. App. 278; *Balvin* v. *Balvin,* 151 N. Y. S. 60, 63, 165 App. Div. 362.

The constitution and by-laws are a part of the contract and this contract was subject to the same rules as any other contract of insurance limited by the regulations made by the association itself. *McLaughlin* v. *McLaughlin,* 104 Cal. 177, 43 A. S. R. 83, 37 Pac. 867; *Courtois* v. *Grand Lodge, etc.,* 135 Cal. 552, 87 A. S. R. 137.

*Ely B. Mitchell,* for appellee.

I. When Virginia Freeman obtained an absolute divorce from her husband, Sam Freeman, was he excluded from the class of beneficiaries named in the constitution and by-laws of the association? This is a contract between a mutual benefit association and one of its members. The law applicable to this contract is found under Mutual Benefit Associations. 29 Cyc., page 106. Sam Freeman at the time of the death of Virginia Barnett was not in that class of beneficiaries named in the constitution and by-laws.

II. Since this policy was issued by a mutual benefit association to one of its members, can the constitution and by-laws be changed so as to effect the pre-existing contracts of its members?

The supreme court of our state has held that the application for a policy of insurance is part of the contract, under the rule that it is competent for parties to contract with reference to existing or future loss. The insurance contract between a fraternal association and its members consists of the the application for membership, the certificate of insurance and the constitution and by-laws of the association read together. *Newman* v. *Supreme Lodge, K. of P.,* 110 Miss. 371, 70 So. 241; *Thompson* v. *Thompson,* 100 Miss. 869, 57 So. 291.

This court has also held that the constitution, by-laws and rules of a benefit association form part of the contract. *Dornes* v. *Supreme Lodge, K. of P.,* 75 Miss. 466, 23 So. 191; *Sov. Camp. W. O. W.* v. *Woodruff,* 80 Miss. 546, 32 So. 4.

Since the certificate or policy issued in this case made the laws then in force and those thereafter to be enacted a part of the contract of insurance, the laws which were passed after the existence of this policy became and was a part of this contract. *Newman* v. *Knights of Pythias,* 100 Miss. 371, 70 So. 241. Sam Freeman as beneficiary

in the policy issued to Virginia Freeman had no vested right in the policy. *Liles* v. *Eubanks,* 114 Miss. 587, 75 So. 447; *Sykes* v. *Armstrong,* 111 Mass. 44.

III. What effect did the absolute divorce, obtained by Virginia Freeman have upon the policy of insurance in this case? 9 R. C. L. 302, page 486, citing the following cases: *Gilley* v. *Gilley,* 79 Me. 292; 1 A. S. R. 307; *Pretzinger* v. *Pretzinger,* 35 Ohio St. 452; *Zilley* v. *Dunwiddie,* 98 Wis. 428, 67 A. S. R. 820; *Atkeson* v. *Sov. Camp, etc.,* 90 Okla. 154, 32 A. L. R. 1108; 9 R. C. L. 163; *Taber* v. *Taber,* 21 Am. Dec. 742, note 747 to 752; *Hanover* v. *Hanover,* 7 Am. Dec. 335.

The absolute divorce granted by the chancery court of Alcorn county terminated the marriage relation between Virginia Freeman and Sam Freeman as entirely and absolutely as if dissolved by death. After this time Sam Freeman was not the husband of Virginia Freeman; they were to each other as strangers. They were made as single persons, with no more relation existing between them than before their marriage. In other words, Sam Freeman was not related to Virginia Freeman so that he could have been made a legal beneficiary.

I have been unable to find where the supreme court of Mississippi has decided the particular point in issue in the case at bar; that is, whether or not a person's eligibility as a beneficiary depends upon his sustaining a particular relation to the member at the time the application is taken out or is determined as of the time of the death of the member. See, however, *Metropolitan Life Ins. Co.* v. *James Bates,* 94 So. 216; *Gray* v. *Sovereign Camp W. O. W.,* 47 Tex. Civ. App. 609, 106 S. W. 176; *Christina Caldwell* v. *Grand Lodge, etc.,* 82 Pac. 781, a later case than *Courtois* v. *Grand Lodge, etc.,* 135 Cal. 552.

IV. The final and main point of this litigation is whether or not the divorce obtained by Virginia Freeman excluded Sam Freeman from that class of benefi-

ciaries designated in the constitution and by-laws of the association.

"Where a person's eligibility as a beneficiary depends upon his sustaining a particular relation to the member, his eligibilty is generally determinable as of the date of the member's death." 29 Cyc. 106.    Quite a number of states have followed this authority.    See *Caldwell* v. *Grand Lodge, etc.,* 82 Pac. 781; *Knights of Columbus* v. *Roe,* 7 Conn. 545; *Sup. K. & L. H.* v. *Menkhausen,* 106 Ill. App. 665, 209 Ill. 277; *Williams* v. *Williams,* 10 Ky. Law Rep. 37; *Larkin* v. *K. of C.,* 188 Mass. 22; *Supreme Lodge O. M. P.* v. *Dewey,* 142 Mich. 166; *Lister* v. *Lister,* 70 Mo. App. 99; *Davin* v. *Davin,* 114 App. Div. 396; *Kemp* v. *N. Y. Produce Exchange,* 34 N. Y. Div. App. 175; *De Grote* v. *De Grote,* 175 Penn. St. 50; *Thomas* v. *Covert,* 126 Wis. 593.

"So if a wife is named as beneficiary, her right to the benefit is ordinarily defeated by an absolute divorce." *Kirkpatrick* v. *M. W. of A.,* 103 Ill. App. 468; *Taylor* v. *O. M. Relief Ass'n,* 145 Mass. 133; *Lavigne* v. *Ligue, etc.,* 178 Mass. 25; *Order of Ry. Conductors* v. *Coster,* 56 Mo. App. 196; *Applebaum* v. *United Com. Travelers,* 171 N. C. 435; *Sov. Camp W. O. W.* v. *Noah,* 34 Okla. 596; *Williams App.,* 92 Penn. St. 69; *Haymond* v. *Hayer Hoff,* 16 Wkly note, Cas. Pa. 216; *Schonfield* v. *Turner,* 75 Tex. 324; *Gray* v. *Sov. Camp. W. O. W.,* 47 Tex. Civ. App. 609; *Severa* v. *Bera Noak,* 138 Wis. 144.

McGOWEN, J., delivered the opinion of the court.

Henderson Barnett, the husband and administrator, brought suit against the Odd Fellows Benefit Association of the state of Mississippi on an endowment policy of that association.    The defendants named in the declaration were the said association and Sam Freeman, who at the date of the issuance of the policy, and before and after that date, was the lawful husband of Virginia F. Barnett, deceased, to whom the policy was issued, and

who was a member of the Household of Ruth of the Odd Fellows Benefit Association of Corinth, Miss.

This policy was dated the 23d day of January, 1907. Being a member of the subordinate household of that order, Virginia Barnett was in good "financial" standing from the time she joined until her death, the 18th day of January, 1926. The policy named Sam Freeman, the second husband of the insured, as beneficiary, to be paid according to the schedule fixed by the constitution and by-laws of the order.

At the time of her death the lower court adjudicated that there was four hundred sixty-one dollars and forty-five cents due on the said policy. Sam Freeman was husband No. 2 of Virginia Barnett. (It was agreed that she had been previously married; that as a result of the first marriage two daughters had been born to her, both of whom were living at the time of the death of husband No. 1; and that husband No. 1 had died before she married Freeman, husband No. 2.)

In 1917 Virginia secured a divorce, absolute in its terms, from Sam Freeman, from whom she had separated, and with whom she never afterwards lived as a wife; and, after she secured the divorce, she was married to Henderson Barnett, the husband until her death, and the administrator of her estate.

By agreement, the matter was submitted to the circuit judge, and, while the pleadings are informal, no point is made thereon, and the precise question submitted to the court below was, whether Sam Freeman, the divorced husband, named as beneficiary in the policy, was entitled to the proceeds thereof, or whether the heirs at law were entitled to same, she not having changed the beneficiary in her lifetime, and the benefit association having paid the money into court.

The policy of insurance issued stipulated that the contract was to be governed by the constitution, charter, and by-laws of the said association then in force, or which might thereafter be enacted.

Section 4 of the constitution and by-laws is as follows:

"The purpose for which the Odd Fellows Benefit Association is created is to insure the lives of the members of the Grand United Order of Odd Fellows and Household of Ruth, and provide an endowment fund to be paid only to the following relatives of deceased members of the association who were financial at the time of their death, in the Odd Fellows Benefit Association, the grand lodge, and their subordinate lodge, viz.: husband, wife, children, mother, father, sister, brother, uncle, aunt, nephew, niece, or dependent relatives. Provided that, if there are none of the foregoing relatives or dependent relatives, the said benefit shall revert to the order as a general fund.

"If there be more than one beneficiary under a policy, and if one or more of the said beneficiaries should die before the assured, the surviving beneficiary or beneficiaries shall be paid the entire proceeds of the said policy."

Section 9 provides that, upon compliance with all the conditions, on the death of the insured member, "the said association will pay to the person or persons named in the face of the certificate, according to section four as the beneficiary thereof a sum of money not to exceed the benefits," etc.

Section 16 provides that:

"Whenever any member shall desire to make any change in the beneficiary in the face of his policy, he shall make application for such change on the back or reverse side of his policy, have his signature attested by two witnesses with the seal of the lodge attached, and acknowledged before an officer authorized to administer oaths by the laws of the state of Mississippi, and forward the policy to the secretary and treasurer who shall issue a new policy according to the change desired upon the payment of one dollar."

Section 18 is as follows:

"No benefit shall be paid on any policy or contract unless a beneficiary is named within the described class, where the member is unfinancial in his subordinate lodge or grand lodge, or has been expelled or suspended from his subordinate lodge, or dies from excessive use of intoxicating liquors, opiates, morphine, cocaine, or like drugs, or is killed by a beneficiary named in the policy, or by the hand of justice, or in consequence of violating any law of the state or United States, in a duel, suicide, or where any statements made in application are untrue. In any of which events, the certificate shall be forfeited without notice to the beneficiary or holder thereof."

It will be noted that this organization is a mutual benefit association, operated for the benefit of the members of the association only, and its funds are created out of premiums paid in by the members, which funds are paid out *pro rata* on the assessment plan.

In this case the association paid the money due into court, and asked that it be adjudged to the party or parties to whom it rightfully belonged as between these contestants. The court below adjudged the money should be delivered to the administrator of the estate, to be paid out by him subject to court costs, to the heirs at law above named, and held that Sam Freeman, at the date of the policy was in the insurable class as a husband; that at the date of the death of the insured Sam Freeman was not in the insurable class, having been divorced; and that he had no interest therein at the date of the death of the insured.

Counsel for appellant ingeniously and forcibly urges upon the court that the decree of divorce has no effect on Freeman's right to the proceeds of this policy, and mainly relies upon the case of *Courtois* v. *Grand Lodge of Ancient Order of United Workmen*, 135 Cal. 552, 67 P. 970, 87 Am. St. Rep. 137, and *Sovereign Camp, etc.,* v. *Israel*, 117 Ark. 121, 173 S. W. 855 in each of which cases it is held that a beneficiary named in a mutual benefit insurance policy has a right to the proceeds thereof,

unless the member (insured) changes the designated beneficiary in the manner prescribed by the contract. And in the Courtois case it is held that, if a member of the benefit society designates his then wife as his beneficiary in accordance with the laws of the society, and dies without having changed his beneficiary, the person named, though subsequently divorced, is entitled to the benefit to the exclusion of a second wife, and his children by her; and further held that in such case the fact of such divorce is not the legal equivalent of the death of the beneficiary designated so as to give to the second wife of the member, or his heirs, any right to the benefit fund, which must be paid to the divorced wife.

We have examined these and other cases cited holding that the divorced spouse is entitled to the proceeds and benefits of the policy in just such a case as the one we have here, but we are constrained to believe that those courts, by a strained construction upon the language of the contract, permitting the insured to change the beneficiary, placed undue stress and emphasis upon that feature of the contract. Sam Freeman did not suffer physical death by the decree of divorce in the instant case; nevertheless by the laws of this state, the divorce being absolute in form, he no longer had any claim upon the wife as husband. The relation of husband and wife died, so to speak, by the decree of divorce, and he was no longer within the class entitled to share in the proceeds of the mutual benefit policy, not being related by affinity or consanguinity to the insured. In other words, at the date of the issuance of the policy, he was in the class. At the date of the decree of divorce, and from then until the death of the insured, the law of the land had removed him from the class. The beneficiary, not having seen fit to change the beneficiary in the manner prescribed, is presumed to have preferred that the proceeds of her insurance policy should be distributed as the law directs.

In our state we are committed to the proposition that a beneficiary named as such in a mutual benefit policy has no vested right in the policy. His *status* is thus described:

"Where under the constitution and by-laws of a fraternal order constituting a part of the contract of insurance, the insured was authorized to change the beneficiary when he desired, a named beneficiary has only an inchoate, imperfect and ambulatory right, . . . and her right may be defeated by a change of beneficiary by the insured member, though she was designated as beneficiary pursuant to an antenuptial agreement with the insured." *Sykes* v. *Armstrong,* 111 Miss. 44, 71 So. 262; *Liles* v. *Eubanks,* 114 Miss. 587, 75 So. 447.

"An absolute divorce terminates the marriage relation, and the husband and wife are each to the other as entire strangers; their duties *inter se* which arose out of the marriage relation are put an end to. By an absolute divorce the marriage relation is as absolutely destroyed as if dissolved by death. . . . And it has been held that relationship by affinity is terminated by an absolute divorce dissolving a marriage out of which it arose." 9 R. C. L., section 302, p. 486, and authorities there cited.

"Where a person's eligibility as beneficiary depends upon his sustaining a particular relation to the member, his eligibility is generally determinable as of the time of the member's death." 29 Cyc., 106, and authorities there cited.

And on the same page, under note 14:

"So if a wife is named as beneficiary her right to the benefit is ordinarily defeated by an absolute divorce"— citing numerous cases.

Likewise, on the same page is this statement:

"*Change of Status After Issuance of Certificate Rendering Beneficiary Ineligible.*—If insured designates as beneficiary a member of his family as such, a subsequent breaking off of the family relation before insured's

death defeats the beneficiary's right to the fund''—citing authorities.

In the case of *Larkin* v. *Knights of Columbus,* 188 Mass. 22, 73 N. E. 850, the member was unmarried, and living apart from his relatives, and designated his father as beneficiary in a mutual benefit policy. Later he married, and his wife was a member of his family until his death. He made no change in the designation. On his death the corporation paid the amount due on the certificate to his widow under a rule of the order made to carry out provision (c) of the charter. Held, that the payment was lawful, the provision in the charter for payment by the corporation in case of a designation "out of the order named" applying to a designation which originally was permitted, but which by reason of the member's marriage and the consequent change in his family was at the time of his death a designation "out of the order named." The father was not in the order named at the time of the death of the insured. The court further said:

"In view of the purposes of most organizations of this kind, it has been held in some cases that the rights of claimants depend upon the *status* at the date of the member's death"— citing *Tyler* v. *Odd Fellows' Relief Association,* 145 Mass. 134, 136, 13 N. E. 360; *Sargent* v. *Knights of Honor,* 158 Mass. 557, 33 N. E. 650; *Knights & Ladies of Honor* v. *Menkhausen,* 106 Ill. App. 665.

We have examined numerous authorities from other states holding to the announcement of the rule cited from Cyc., *supra.* Most of the courts adopting the other rule had under review contracts in regular straight life insurance with companies doing a life insurance business, and did not have in mind mutual benefit societies insuring only its members and undertaking to care for a particular class, having some kind of claim, moral or legal, upon the insured. However, the Courtois case from California and the Israel case appear to be in point. The laws of the order in the California case stipulated that,

upon the death of a full rate member, such person or persons as such member may have directed while living, shall be entitled to the beneficiary funds; and also that the beneficiary so designated by the member and named in the certificate shall, in every instance, be a member of his family, or some one related to him or dependent upon him.

And also the court held in that case that the by-laws vested in the designated beneficiary the right to the money immediately upon the death of the member. But we have already cited cases from our own court showing that we are not aligned with that strict view of this character of contract, and in the authorities cited, *supra,* this is demonstrated. We think the very purpose of this and kindred societies would be defeated by holding to the letter of the contract. The contract does provide that a beneficiary of the class must be named. It provides further the method as to the designation of a member of the class as beneficiary, and it stipulates that, if a member of the class is not named as beneficiary, the insurance fund shall revert to the society. In this connection we especially stress the fact that the contract of insurance was subject to subsequent changes in the constitution and by-laws, and that in this case the constitution and by-laws were changed in some particulars, and that the contract of insurance in force at the date of the death of the insured was different, as amended by the by-laws and constitution, from the contract issued in 1907. But, at the time of the issuance of the contract, Freeman, the named beneficiary, was of the class, and on the granting of the divorce he went out of the class. So the insured did name a beneficiary within the class, but the by-law quoted does not stipulate that the insurance shall revert to the order, if the policy named a beneficiary qualified under the contract who afterwards becomes ineligible by operation of law and not by the designation of the insured. So we feel sure that the main purpose of this order was to provide a fund for those who sustain

the relationship to the beneficiary described in the class mentioned in section 4; and that it was not its purpose to write insurance generally. We believe that, if we construe the contract in so far as the divorced husband is concerned with reference to the *status* of the insurance at the date of the death of the insured rather than the date of the issuance of the policy, we will carry out the general purpose of this contract in this mutual benefit society and other kindred and similar organizations.

In view of the holding of this court in the *Armstrong* and *Liles cases, supra,* the insured had a right to think that she continued to be insured and her policy continued in force, payable at her death to the parties who held relationship to her as provided in the by-laws of the order, and therefore did not change the beneficiary because the properly designated beneficiary in the original policy had become ineligible, and was no longer her husband. The order, in this case, does not raise any point as to the designation of a beneficiary, but pays the money into court, and asks the court to settle the rights of the contending parties.

We are of opinion that in mutual benefit insurance contracts such as is here involved the divorced husband has no interest in the policy if an absolute divorce be granted, and he does not sustain the relation of husband at the date of the death of the insured, and that the administrator or the legal representative of the estate of the insured in such case is entitled to recover as against the divorced husband, and holds the amount of the recovery as a trust fund for the benefit of the heirs at law who are within the designated class as stipulated by the contract under the rule adopted by this court in the *Armstrong* and *Liles cases, supra.*

Freeman, as a husband, was dead so far as Virginia, the former wife, was concerned. The date the decree of absolute divorce became effective, and his rights under this contract ceased instantly, and the policy and con-

tract will be construed as though he had died a physical death on the date of the decree of divorce. We think the judgment of the court below was correct.

*Affirmed.*