HARPER *v.* FEARS.

(Division B. Jan. 8, 1934.)

[151 So. 745. No. 30967.]

**W. U. Corley,** of Collins, for appellant.

Ruth L. Bertrand, of Hattiesburg, for appellee.

E. L. Dent, of Collins, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

This is an appeal from a chancery court decree involving the right to the estate of James Fears, deceased.

The appellee, Mrs. Belle Fears, was married to the said James Fears in August, 1918, and as a result of said marriage there are three children. James Fears had formerly been married to Mrs. Ray D. Harper, having married her in 1907. Shortly afterwards, they separated, and she last heard of him directly in 1909, after which time she never had any further correspondence with him. In 1911, she received a telegram from his sister stating that he was dead. Not having heard from him as living since 1909, and relying on the truthfulness of the telegram, on January 3, 1917, the appellant, Mrs. Ray D. Harper, married one Nesbitt, lived with him a short time, divorced him (he is now living), and then married Ray D. Harper, he being now deceased. She did not know of the marriage of James Fears to the appellee until she learned through proceedings of the Veterans' Bureau of the death of James Fears in 1932. She herself never secured any divorce from Fears, but, as stated, believed him to be dead. About one year after Mrs. Harper married Nesbitt, James Fears married the appellee, Mrs. Belle Fears.

The record does not disclose all the places that James Fears may have lived, but he appears to have been a World War veteran, and to have lived in different states at different times, and otherwise his place of residence is not disclosed. Both marriages contracted by Fears

took place in Texas, and after his last marriage to Mrs. Belle Fears they came to Mississippi and lived together as husband and wife for many years, having three children. There was a certificate introduced in the record showing the issuance and recordation of a marriage license for the celebration of the marriage of Mrs. Belle Fears and James Fears, which license was not produced, having been sent to the Veterans' Bureau in proof of the appellee's right to the funds due under such Bureau, or from the government.

After learning of the death, in 1932, of the said James Fears, Mrs. Ray D. Harper set up a claim to his estate, claiming to be his wife. It appears from the record that she had filed a bill for divorce shortly after his disappearance, but the bill was dismissed for want of prosecution, and no decree of divorce was rendered therein.

Mrs. Belle Fears stated that James Fears told her in 1918 that Mrs. Ray D. Harper had died prior to the marriage of Mrs. Belle Fears and James Fears, and that she married relying upon this information.

The chancellor dismissed the claim of the appellant, Mrs. Ray D. Harper, and, from his decree this appeal is prosecuted.

We have held in numerous cases that the law presumes a divorce in favor of a marriage duly performed. Pigford v. Ladner, 147 Miss. 822, 112 So. 785, and Ladner v. Pigford, 138 Miss. 461, 103 So. 218, and cases therein cited. In the report of the case in 147 Miss. 822, 112 So. 785, it was held that to overcome the presumption of a prior divorce in favor of validity of ceremonial marriage, where the woman had previously been married to a man living at the time of her second marriage—in view of Code 1906, section 1677 (Hemingway's Code 1917, section 1419), providing where bill for divorce must or may be filed—in the absence of proof that the man was a nonresident, or was absent, so that process could not be served on him, it was necessary to show his residence

between the separation and the second marriage, and that no divorce was granted in any county where he then resided, or could be found; and proof of no divorce in the counties of her residence was insufficient.

In Wilkie v. Collins, 48 Miss. 496, it was held that, under the facts there shown, the court would presume that the party was dead at the time of the second marriage, saying that there is always a presumption that every individual conforms his conduct to the requisitions of duty, as prescribed by law, and that it belongs to universal jurisprudence that innocence of an act which the law forbids and denounces as criminal shall be presumed. The court there further said that, ''Therefore, if a man or woman contracts a marriage in due form, the presumption is that the marriage is legal, that is, that there was no legal impediment in the way. It was very properly said in Powell v. Powell, 27 Miss. 785, that the 'law favors marriage,' and 'requires clear testimony to invalidate it.' The superstructure of society rests upon marriage and the family as its foundation. The social relations and the rights of property spring out of it, and attach to it, such as dower, administration, distribution and inheritance. All controversies, therefore, growing out of marriage, assume the dignity and importance of quasi public questions.'' On page 512 of 48 Miss., the court said: ''The presumption in favor of the marriage of Mary Elizabeth with Wilkie is greatly sustained and aided by the testimony. It was in evidence that her relations with her first husband, Roberts, were agreeable and pleasant; that he left home in the fall after the marriage to go to Louisiana on business; that he wrote several times to his wife; the last letter, written from a sick bed, stated that as soon as he recovered he would return home. He was represented as a delicate man in feeble health. The correspondence suddenly ceasing, and Roberts not being heard from for quite a year, when Mrs. Roberts married again, begets the strong impression that his

feeble frame succumbed to the disease which was upon him when he wrote the last letter to his wife, and that when she married Wilkie she was a widow. Such was the belief of the family." See, also, Spears v. Burton, 31 Miss. 547.

In Alabama & V. R. R. Co. v. Beardsley, 79 Miss. 417, 30 So. 660, 89 Am. St. Rep. 660, it was held that the court would presume a divorce, although there was no evidence of such divorce introduced, in favor of a duly performed second marriage, and such has continued to be held by this court.

In Gibson v. State, 38 Miss. 313, the court held that the law presumes, in favor of the validity of a marriage contracted by a person whose husband or wife by a former marriage has been absent and not heard from, and not known by such party to be living for five years preceding such second marriage, that the absent and unheard of husband or wife is dead. At page 321 of this report, the court said: "The question upon which this position depends is, whether the marriage between the accused and Maria Williams was in law valid, under the circumstances in which it was contracted. It appears by the evidence, that her former husband had been absent for more than five years at the time, and had not been heard of during that period; that he had been reported to be drowned, and that the report was believed and acted on in the family connection, and Williams has not since made his appearance, and is not shown to have been alive since his departure. That, under such circumstances, the marriage was celebrated in due legal form. In point of civil rights resulting from the marriage, it cannot be doubted that such a marriage would be valid, the former husband not having been proved to be alive after it took place. The right of dower in the wife would have existed, and the offspring of the marriage would have been legitimate and the legal heirs of the father's estate.

This results from the presumption of law created by our statute in relation to bigamy, exempting any person from the penalty of the statute who shall contract another marriage after the husband or wife shall have been absent for five successive years, without being known to the person contracting the marriage to be living. Hutch. Code, 977, section 2.''

Under the present statute, the period required to raise the presumption of death is seven, instead of five, years, as formerly.

It seems to us that, when the period of absence has existed for seven years, the absent party not being heard from during that time, and the presumption being that he is dead, and the wife having acted upon such presumption in good faith and contracted another marriage, such marriage is legal. To hold otherwise in this case would be to convict five persons of adultery, and would bastardize three innocent children. If the law itself acts upon the presumption, we see no reason why a party acting upon it in good faith, by contracting an irrevocable status affecting the honor and legitimacy of other people, should not so act and such act be valid. It would best promote the security of social relations to hold that, where one had innocently contracted the status of marriage after seven years, such status is valid, and to protect such person against another who had withdrawn himself from the state, his acquaintances, and his family. Certainly such a person voluntarily absented himself under such conditions, and could not complain if, during his absence, his marriage status was dissolved by such act. It would be stronger where, as in this case, the party seeking to challenge the marriage has herself or himself, prior to the marriage challenged, contracted a marriage. The appellant here, Mrs. Ray D. Harper, had contracted a second marriage when the marriage challenged took place. She should not be allowed to now set up the illegality of the marriage which may have been

brought about by the fact of her marriage. The dead husband, Fears, cannot be produced to defend his second marriage, and the law should clothe that marriage with every sanctity possible. Why should the law permit a person to withdraw himself for a long period, such as seven years, without communication to his family and friends, and by such act cause another to remarry, and then by returning to his original surroundings, bastardize innocent children? Under the facts in the case at bar, the appellant was estopped to set up her claim.

It seems to us that it would be sounder reasoning to hold that, if the absence had been for the statutory period, without the party having been heard from, and a marriage having been contracted on the strength of such prolonger absence, it should be protected and the contracting parties given a valid legal status.

The law is supposed to be the perfection of reason, and it changes, from time to time, to conform to standards, custom, and common sense. See Funk v. United States, 54 S. Ct. 212, 78 L. Ed. —, decided December 11, 1933.

Affirmed.