FRANK *et al. v.* FRANK.

(In Banc. Dec. 14, 1942. Suggetion of Error Overruled Jan. 11, 1943.)

[10 So. (2d) 839. No. 35107.]

W. W. Simmons, of Cleveland, for appellants.

Roberts & Smith and **W. D. Jones**, all of Cleveland, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The Knights and Daughters of Tabor, Mississippi Jurisdiction, a fraternal organization, issued an insurance policy to Isom Frank for $200, payable to his beneficiary or beneficiaries, his wife being designated in a memorandum on the back of the policy as the beneficiary. Isom died, and thereafter the association paid the money to the clerk of the court below on an interpleader, alleging that it was claimed by Ollie Lee Frank, as Isom's widow, and by Levy Frank and others, as heirs at law, if Ollie Lee is not his widow, which they deny. These claimants appeared and propounded their claims.

One of the by-laws of the association provides that beneficiaries "may be, only persons related to the insured, either by blood, within the fourth degree, or by marriage, or persons upon whom the insured is wholly dependent for a living."

In July, 1912, Ollie Lee was legally married to Dan Evans. Shortly thereafter Dan left her and went to Arkansas, where he is now living. Ollie Lee did not know of his whereabouts; neither did his relatives in Mississippi, nor other persons with whom he would have been likely to communicate. In 1927 Dan's sister wrote a postmaster in Arkansas, where she thought Dan might be, asking for information about him, to which the postmaster replied that he had been drowned. This she communicated to Ollie Lee. No divorce has been granted to either Dan or Ollie Lee. In March, 1935, Ollie Lee

contracted a marriage with Isom Frank. Dan has also married again. The decree of the court below awarded the money to Ollie Lee. Since Dan is now living, and consequently was in March, 1935, and the marrige between him and Ollie Lee not having been dissolved by a divorce, her marriage with Isom is void unless it is validated, as her counsel claims, by the presumption of death created by section 1537, Code 1930, which section is as follows:

"Any person who shall remain beyond the sea, or absent himself from this state, or conceal himself in this state, for seven years successively without being heard of, shall be presumed to be dead in any case where his death shall come in question, unless proof be made that he was alive within that time; but any property or estate recovered in any such case shall be restored to the person evicted or deprived thereof, if, in a subsequent action, it shall be proved that the person so presumed to be dead is living."

This statute embodies a rule of the common law, the origin of and reason for which are interestingly set forth in Thayer's Preliminary Treat. on Ev., pp. 319 et seq.

Under its express provision as at common law, the presumption of one's death arising from seven years of absence without being heard from disappears when proof is "made that he was alive within that time." According to 38 C. J. 1296, and note to Harper v. Fears, 93 A. L. R. 345, "At common law (and therefore under this statute) a husband or wife who has been absent and unheard of for seven years is presumed to be dead, and the remaining spouse is permitted to contract a valid marriage; but where the presumption is rebutted by facts, showing that the absentee is alive, the intended marriage is rendered void ab initio, and leaves the parties as before, although the offending party may be protected from criminal punishment." This court has twice so said. Gibson v. State, 38 Miss. 313, and Watson v. Watson, 177 Miss. 767, 171 So. 701.

But the appellee says that in Ladner v. Pigford, 138 Miss. 461, 103 So. 218, and Harper v. Fears, 168 Miss. 505, 151 So. 745, 93 A. L. R. 341, this court decided that a second marriage, contracted after the other spouse to the former marriage has been absent from the state without being heard from for seven years, is valid. We do not so interpret those cases, and to have so held would have violated the plain language of the statute. In both of them the presumption of death arising from seven years' absence was referred to, and the opinion expressed that to hold a second marriage, contracted on the faith of the presumption, invalid, would be unjust; but the second marriages there in question were not held valid for that reason. In the Ladner case its validity was based on the rule that a divorce from a former marriage will be presumed in favor of the validity of a second marriage, in the absence of evidence to the contrary. This interpretation was placed on the case when it again appeared in this court as Pigford v. Ladner, 147 Miss. 822, 112 So. 785.

The Harper case was decided on two grounds: (1) the presumption of a divorce arising from the contraction of a second marriage, the Ladner case being cited as authority therefor; and (2) the estoppel of a wife who had herself contracted a second marriage, to challenge the validity of the second marriage by her former husband. This opinion was so interpreted by its author in the head notes thereto, which were written by him. Compare comments on the case in Watson v. Watson, supra.

The decree of the court below will be reversed, and a decree will be rendered here for the appellants, in accordance with Freeman v. Barnett, 146 Miss. 849, 112 So. 161, 52 A. L. R. 375, and Henderson v. Woodmen of Union, 163 Miss. 210, 141 So. 345.

So ordered.

**Griffith, J.**, delivered a dissenting opinion.

In Harper v. Fears, 168 Miss. 505, 151 So. 745, 747, 93 A. L. R. 341, where the first husband had been absent from the state and unheard of, after due inquiry, for more than seven years, the court said: "It seems to us that, when the period of absence has existed for seven years, the absent party not being heard from during that time, and the presumption being that he is dead, and the wife having acted upon such presumption in good faith and contracted another marriage, such marriage is legal. To hold otherwise in this case would be to convict five persons of adultery, and would bastardize three innocent children. . . . It seems to us that it would be sounder reasoning to hold that, if the absence had been for the statutory period, without the party having been heard from, and a marriage having been contracted on the strength of such prolonged absence, it should be protected and the contracting parties given a valid legal status."

This language is too plain to be brushed away by interpretation, and while it is true that the decision was placed also on another ground, the rule is firmly established that where under applicable facts there are two grounds upon either of which an appellate court may rest its decision, if it adopts both, the ruling on neither is obiter and each is the judgment of the court, and of equal validity with the other. United States v. Title, etc., Co., 265 U. S. 472, 44 S. Ct. 621, 68 L. Ed. 1110; Jones v. Mutual Creamery Co., 81 Utah 223, 17 P. (2d) 256, 85 A. L. R. 908; and see the numerous additional cases cited in 21 C. J. S., Courts, Sec. 190, pp. 315, 316, particularly under note 90. The language of this court in adopting the quoted text in Baldwin v. Anderson, 103 Miss. 462, on page 466, 60 So. 578, on page 580, is to the same effect.

Nor has Harper v. Fears been affected by what was later said in Watson v. Watson, 177 Miss. 767, 171 So.

701, for there the first husband had never been out of the state, nor had he concealed himself within it. The seven years' absence statute was, therefore, not there involved save the determination that under the facts it had no application to, or place in, the case.

What has been done by the majority in the present case is to overrule Harper v. Fears, and this, as we have repeatedly said, should not be done unless the overruled decision is manifestly erroneous, or is mischievous in operation. Moreover, appellee's second marriage in this case was subsequent to the decision in Harper v. Fears. Instead of that case being manifestly wrong, its holding would better serve the interest of the repose and security of the people of this state, considering that more than one race with their varying degrees of difference in culture and understanding dwell within our jurisdiction, and always will; and that instead of being mischievous in operation, it would prevent the bastardizing of innocent children, the disruption of long-established homes, and the tragic heartbreaks which would be the only fruits of the rule upon which the majority now insists.

**Anderson, J.,** delivered a dissenting opinion.

I concur in Judge GRIFFITH's dissent. The following, however, may add something to its force.

In my judgment the majority opinion is unsound and most harmful in its results. Any decisions, if there be any, of our court supporting it ought to be overruled. To illustrate what might occur under the holding of the court: A deserts his wife and goes to a foreign state. For more than seven years his wife neither hears from him nor knows of his whereabouts, although she and her family and friends have made diligent efforts to ascertain if he is alive, and if so, where he is. They all believe he is dead. Acting on this belief, she married again and has children—sons and daughters—by the marriage.

Twenty-five years thereafter the husband turns up. She and her second husband are intelligent, upright and useful members of society. Their children are worthy of their parents. Nevertheless, under the controlling opinion they are bastards.

The statutory presumption of death ought to be conclusive in such a case. In other words, it ought to be equivalent to a divorce.