Nathan D. Lapham, Off. Ref.
This nncontested action for dissolution of marriage pursuant to section 7-a of the Domestic Relations Law was referred to me as Official Referee by order *317 dated May 10, 1957 to hear, try and determine. Proof was taken on May 20 following and decision reserved.
The petitioner testified that they were married in a civil ceremony in New York City, October 29, 1936; lived at one address until July 13, 1941, when his wife disappeared; and, in fact, that he continued to reside in the same house until 1946. He claims they were happy with ‘‘ just petty ’ ’ arguments; that he knows of no reason for her leaving; that she was not in ill health; that he has not seen her or heard from, or of, her since that July 13, 16 years ago; and that he believes her to be dead.
But his belief is based almost completely on the length of time that has transpired and the fact his wife has not returned or communicated with him, rather than on any thorough investigation or search conducted or instigated by him.
Petitioner testified that, when he returned from work July 13, 1941, his wife was not there but, otherwise, the apartment was the way he had left it when he went to work that morning. Prom that point his story is pregnant with disinterest and inertia. He did. not say whether any of her clothing or personal belongings were missing. He would now explain his strange inaction by saying he thought his wife would return and his attorney stressed petitioner’s youth at the time and his alleged confusion as accountable for his apparent apathy. Mr. Delaney testified that at some unspecified time after his wife’s disappearance he met on the street “ a girl friend of hers * * * the only connection I knew she had with anybody ’ ’ and asked her if she had seen Mary but “ she wouldn’t answer me. She just didn’t pay any attention”. He does not say this friend registered any surprise or concern but, to the contrary, paid no attention to his announcement freighted with such serious implications. It would seem her silence and lack of co-operation would have caused an ordinarily prudent person to suspect that this friend was hostile or possessed some knowledge she was withholding from him, but there is not a scintilla of evidence he pressed her for an explanation of her attitude, or, indeed, that it impressed him as strange and unusual. To the contrary, his claim of diligent search is based for the most part on his assertion that from that time until the death of this woman in 1952 he continued to make inquiry of her and was always told she didn’t know what happened to his wife or where she was. It is true he said he also asked the people who lived upstairs with whom he was accustomed to exchange greetings on casual meetings in the hall, and who were the only neighbors he knew *318 at all; and that as long as he lived in the neighborhood (some five years) he inquired at the delicatessen where his wife was known if they had " any news ’ ’, always to receive the same negative reply. Plaintiff says his wife came from “ some place up New York State ” but had no relatives he knew of. It seems incredible that a husband would live with his wife five years and not have some knowledge of the area of her origin more definite than some place up-State, yet he did not pinpoint it more precisely, and there is absolutely no evidence of any attempt on his part to extend his inquiry outside the narrow confines of his immediate neighborhood. I do not find that the wife’s age is given in the record but from attorney’s deduction based on the youth of the petitioner in 1941, it would seem reasonable to believe she, too, was young and, therefore, not too far removed in point of time from her girlhood home and the recollection of former friends and neighbors there, yet that possible source of information was left unexplored.
I am cognizant of the fact that a couple may live for considerable periods of time in a large city as an island unto themselves with few contacts with the immediate neighbors, bqt it is rare not to have a circle of close friends, however limited. Petitioner here says he had no one to whom to turn other than his wife’s “ girl friend ” who, by his own words, offered no hope of assistance or interest. Yet, alone in that large city which had mysteriously swallowed up his wife, he did not report her disappearance to the police or to the bureau of missing persons, and the reason he now assigns for such lapse is “ Well, I just didn’t give them any thought ”. Apparently he gave no thought to the possibility of a clue in her former up-State home or even in the place where she had been employed in New York before their marriage. There is no evidence he took the obvious precaution of checking with hospitals and morgue in case accident had befallen her. He did absolutely nothing except inquire of three fruitless sources — an unco-operative friend of respondent, a little-known neighbor and at the delicatessen, not one of whom was charged with the duty of carrying forward the search. For all he did, she might be living within a few blocks of him, undisturbed and unrevealed by his feeble, intermittent and casual inquiries of private persons without resort to the authorities trained in such investigations and responsible for the solution of such mysteries, if humanly possible.
I am not overlooking that petitioner is not a rolling stone. He said he had been engaged in the same job since 1931 and lived 10 years in the same house after his marriage. He is *319 evidently quiet and reserved. Certainly, in this important matter, he showed himself utterly lacking in imagination and aggressiveness to the point of carelessness. Either that, or he was not so puzzled by her leave-taking as he would now have the court believe. In any event, the question here is: Does the conduct of petitioner as detailed above meet the statutory requirement of “ diligent search ” imposed by the section under which he is moving?
A leading case upon this subject enunciated the doctrine which has been followed to the present. There, writing of the knowledge of defendant as to whether or not her former husband was living, the court said: “ for knowledge within the true meaning of the statute involves all that a person of ordinary prudence would have discovered under like circumstances by an inquiry conducted in good faith with the diligence required by the importance of the subject. The inquiry must be made with an honest effort to find out the truth, not to overlook it so as to be able to testify that nothing was discovered.. A careless or dishonest inquiry affords no protection.” (Stokes v. Stokes, 198 N. Y. 301, 308.)
Mr. Justice Foster, considering this question at Special Term, said: “ knowledge under the former statute meant something more than a passive acceptance of abandonment without inquiry ” and quoted from the Stokes case as above. (Dodge v. Campbell, 135 Misc. 644, 649, affd. 229 App. Div. 534, affd. 255 N. Y. 622. To the same effect: Matter of McNell, 187 Misc. 899, 903.)
In the following case, Surrogate Delehanty said: ‘ ‘ The statute under which respondent seeks to validate her claim of marriage to deceased demands an affirmative showing of an absence of knowledge that the spouse had been alive during the five-year period. It demands, too, an affirmative showing that reasonable search had been made and that despite such search there was no reasonable likelihood of the existence of the spouse. It is only after every reasonable means to determine the facts have been taken that the statutory lack of knowledge can be claimed.” (Matter of Klimenko, 166 Misc. 148, 153, affd. 254 App. Div. 732.)
A further discussion of this rule may be found in Frank v. Frank (193 Miss. 605, Ann., 144 A. L. R 747, 756).
The fact 16 years have elapsed since the departure of his wife from petitioner’s home is a strong indication she will not return to him, but under the facts before us neither the length gf time nor the failure of respondent to come forward following *320 the notice by publication reaches to a presumption of her death. It is my considered opinion that petitioner’s passive acceptance of abandonment with no affirmative showing of a reasonable search stamps his feeble gestures as careless. He did not show that diligence commensurate with the importance of the subject which would he exercised by a person of ordinary prudence and which is required by statute. The application is dismissed.