Rose V. Sleeper, complainant-appellant,

*v.*

Lloyd A. Sleeper, defendant-respondent.

[Submitted October term, 1940.   Decided February 3d, 1941.]

*Mr. Stephēn P. Piga,* for the complainant-appellant.

*Mr. Morris G. Fredman* and *Mr. Ezra L. Nolan,* for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

Complainant's bill in Chancery prayed for separate maintenance and for the voiding of an earlier Nevada divorce decree obtained by her husband. When the case was ripe for final hearing Advisory Master Matthews, upon facts which were in part disclosed by the pleadings, in part conceded by counsel and in part shown by certain exhibits introduced by consent, concluded that the bill should be dismissed. Complainant appeals from the decree so holding.

In 1933, and for some years theretofore, the marriage domicile was in the State of New Jersey. The parties then resided in this state and now reside here. The wife's residence here has been continuous, but her brief on appeal concedes that her husband was a resident of Nevada from December 3d, 1933, to August, 1934. The latter part of December, 1933, Mrs. Sleeper received from Maurice J. Sullivan, an attorney-at-law of Reno, Nevada, a letter accompanied by a form of complaint for divorce. Actually suit had not been instituted; the papers were to inform Mrs. Sleeper that her husband proposed to institute an action for divorce in the courts of Nevada and to apprise her of the nature of the allegations to be contained in the complaint. Mrs. Sleeper, however, understood from them that action had been begun. Presenting that such an action had been started she came into our Court of Chancery and obtained an order dated January 2d, 1934, calling upon Sleeper to show cause on January 30th, 1934, why he should not be enjoined. The order contained the direction that service of "a true but uncertified copy of the said bill, affidavit and exhibits and of this order be served upon the said defendant wherever he may be found and/or on his attorney in said action, Maurice J. Sullivan, in the City of Reno, State of Nevada, as soon

as possible hereafter and by registered mail addressed to the said Maurice J. Sullivan, attorney as aforesaid, at 17 East Second Street, Reno, Nevada," within ten days from the date thereof; and also contained an *ad interim* restraint against her husband and his attorneys with respect to proceeding in the action that had been represented as theretofore instituted and from commencing or prosecuting any other proceeding for divorce. The papers were mailed to the First Judicial District Court of the State of Nevada in and for the county of Ormsby; but it is conceded that they were not served upon Mr. Sleeper, and there is no convincing proof that they were served upon or mailed to attorney Sullivan. The return date of the order to show cause was continued to February 27th, 1934, and then to March 27th, 1934, when the New Jersey proceeding was abandoned, not by an order, for the record appears still to be open upon the Chancery docket, but by a failure of the complaining party to appear or to take further steps therein.

On January 31st, 1934, Sleeper, by W. L. Hacker, attorney, began an action for absolute divorce in the First Judicial District Court of the State of Nevada, in and for the county of Ormsby. The specified ground was extreme cruelty, which then was and now is recognized by our statute. Service of the summons was made personally upon Mrs. Sleeper who thereupon went to Nevada, engaged and conferred with counsel, decided to fight the action on its merits and accordingly filed an answer and cross-complaint. In the cross-complaint she sought permanent support, separate maintenance and incidental relief. She appeared at the trial, defended, prosecuted her cross-complaint and testified. In neither the answer nor the cross-bill, nor, so far as appears, at the trial, did she mention the New Jersey suit or the restraint therein granted. She accepted the jurisdiction and made her stand there as is evidenced by her pleadings. The Nevada court found that it had jurisdiction, that Sleeper had duly established his residence in that state, determined affirmatively the facts of marriage and extreme cruelty on the part of Mrs. Sleeper, concluded that the husband was entitled to a decree of absolute divorce and decreed accordingly. There is no suggestion

of collusion or that Mr. Sleeper fraudulently or otherwise induced his wife to abandon the New Jersey suit or to contest the proceeding in Nevada or to make an appearance therein, or that the western proceeding was other than an honestly contested litigation wherein the issues were heard and disposed of on their merits. It is now alleged in Mrs. Sleeper's behalf that her husband fraudulently represented the facts relating to his alleged residence in Nevada; but she did not allege fraud before the Nevada court and the facts were then as fully known to her as they now are. That court rendered its decision on July 17th, 1934. Service of notice thereof was acknowledged by Mrs. Sleeper's attorney on July 26th, 1934. Decree final was entered September 7th, 1934. There was no appeal. In 1936 Mr. Sleeper remarried. On April 15th, 1937, Mrs. Sleeper filed the bill of complaint out of which this appeal emanates. The advisory master was of the opinion that complainant had been guilty of *laches* over a period during which new rights had intervened and that full faith and credit should be given the Nevada decree. He therefore advised dismissal of the bill.

Appellant's major point is that respondent, when he instituted the Nevada proceeding, had not maintained his residence in that state throughout the full period of two years. The argument is that inasmuch as the New Jersey statute provided (*2 Comp. Stat. p. 2041 § 33*) that "full faith and credit shall be given in all courts of this state to a decree of * * * divorce by a court of competent jurisdiction in another state * * * when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in sections five, six and seven of this act," and section 6 of the act required, as a condition upon the privilege of instituting a suit for divorce in this state, *bona fide* residence here for a period of at least two years next preceding the commencement of the suit, therefore the Nevada decree was not entitled to credit here because it was not supported by two years' preliminary residence in Nevada. Along with this argument it is said, further, that appellant's defense and personal appearance in the Nevada suit is not a bar to the relief now sought. Chancery decisions

cited in support are *Fried* v. *Fried, 99 N. J. Eq. 106; Garabrant* v. *Garabrant, 95 N. J. Eq. 136; Lister* v. *Lister, 86 N. J. Eq. 30,* and *Hollingshead* v. *Hollingshead, 91 N. J. Eq. 261.* These cases may all, to some extent, be distinguished upon the facts as well as upon the precise point of decision; but without attempting to differentiate, we state our conclusion that a decree of divorce granted by the courts of a sister state is not to be here denied effect under the rules of interstate or international comity upon the bare fact that such court acquired jurisdiction upon a period of preliminary residence which, although in accordance with its laws, was of shorter duration than two years. We think that it was not within the intent of section 33 of our Divorce act to deny recognition to a divorce decree of a sister state upon the sole ground that the party in whose favor such decree had been entered had not resided in that state for a period of two years. That conclusion was reached by the late Vice-Chancellor Leaming in *Schneider* v. *Schneider, 103 N. J. Eq. 149,* following a scholarly review of the statutory provisions and of our case law. See, also, *Ballentine* v. *Ballentine, 112 N. J. Eq. 222,* and *Pahy* v. *Pahy, 107 N. J. Eq. 538.*

Mrs. Sleeper went voluntarily into the Nevada courts and there litigated her marital difficulties; the issue went against her and, notwithstanding her carefully phrased assertion that "she did not receive *actual* knowledge until on or about November 30th, 1936"—that being the time when she procured a transcript of the Nevada proceedings more than two years after the decision—she is chargeable with timely knowledge of that decision, notice of which was contemporaneously acknowledged in her behalf by her attorney. Mrs. Sleeper waited for a still further period of four and one-half months after the time when she says she had *actual* knowledge and then, when her husband, relying on the validity of the Nevada decree, had remarried—and perhaps because of that event—she undertook to seek a form of relief that could be given only on the theory that the second marriage was void and that the parties to that marriage had therefore been living in adulterous relations. *Cope* v. *Cope, 123 N. J. Eq. 190.* New rights had arisen on the assumption of a legal status which

Mrs. Sleeper, over a long period, allowed to stand unchallenged notwithstanding full opportunity to challenge. Whether or not the facts incident to, and the circumstances under which she entered into and vigorously conducted her defense in, the Nevada suit would, by themselves, bar the relief now sought is not determined; but those facts and circumstances, followed by her long inaction and the intervention of the new marriage contracted in good faith after a suitable waiting period, do, in our opinion, serve to place her in *laches* and to bar her from the relief prayed in her bill.

We think, too, that Mrs. Sleeper is in no position now to assert that the show-cause restraint of January 2d, 1934, nullifies the Nevada decree. The Court of Chancery has not deemed it advisable, in vindication of its own dignity, or otherwise, to notice the alleged disobedience. Complainant voluntarily dropped the original Chancery action and joined issue, seeking affirmative relief, in the Nevada proceeding which she presently says was unlawful because of a pre-existing order which she, herself, deliberately disregarded in participating in that which she would now invalidate. Mrs. Sleeper, so far as concerns her civil rights, is estopped and is in *laches*. Moreover, this not a contempt proceeding.

The decree below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.