The plaintiff-appellant seeks an adjudication that a decree for divorce, which her husband obtained in Nevada, is void because neither of the parties was domiciled in Nevada. The second wife of the defendant was permitted to intervene in the present suit and defendant with such effect that the bill of complaint was dismissed for laches. The decree of divorce had been entered more than eleven years before this suit was instituted.
In January, 1936, the defendant left New Jersey for Nevada and obtained his decree April 6 of that year. Within an hour or two after the decree was signed, he married the intervenor, who was then Alice O'Dell, and a few days later returned with her to Fair Lawn, New Jersey, and there they lived together as husband and wife for ten years. In May 1946, the intervenor was obliged to leave the defendant because of his cruelty. She brought an action against him for separate maintenance which he defended on the ground that she was the deserting party. But his defense was not sustained, and on August 8, 1947, she obtained a decree for maintenance in the sum of $12.50 a week. *Page 81 
Very shortly after defendant's second marriage, the plaintiff in the present action, the first Mrs. Lawler, learned that he had received his decree of divorce and that he had remarried. She and her grown son often talked over the question whether the divorce and subsequent remarriage were legal. She was aware through the years that defendant and the intervenor were living together as husband and wife and that she was known in the neighborhood as Mrs. Lawler.
When plaintiff first learned that her husband was seeking a divorce in Nevada, she instituted an action in Chancery of new Jersey to enjoin him from doing so, and obtained an ex parte interim restraint dated March 31, 1936, a copy of which was mailed to him. After defendant returned to New Jersey, she dropped this suit upon his promise to pay her $100 a month. He paid her this sum for a couple of years; then, for some time, nothing at all; and later $40 a month. In May, 1947, after the second Mrs. Lawler had been driven from his home, defendant was taken ill and plaintiff was persuaded to return and take care of him. In November, she began this suit.
Considered as litigation between plaintiff and her husband, this is a friendly action. The parties are living together. The plaintiff has not paid, and does not expect to pay, her own lawyer's fee or any of the expenses of the litigation. Lawler's testimony was an important part of the proof that the Nevada court was without jurisdiction to decree a divorce. The record of that court is entirely regular on its face. It contains a finding of fact that the plaintiff therein, namely, the husband, "is a bona fide resident of the County of Washoe, State of Nevada." This finding was supported by Lawler's own testimony that when he took up his residence in Washoe County, he intended to make that place his home and residence for an indefinite period of time and that he still had that intention at the time of the divorce hearing. In the present suit, he explained, "I couldn't give an honest answer, I went out there to get a divorce." "Even if you had to lie, you did that?" "Yes, I did that." The main purpose of the action now before us seems to be to establish a basis which will enable Lawler to get rid of his second wife and to defeat her judgment for maintenance. *Page 82 
Since Lawler owns real estate, we may assume that the question of dower is also a factor. The intervenor is the real defendant in this combined attack of the plaintiff and the nominal defendant. The suit serves no public policy or social objective.
The decree which is the subject of the present appeal, does not attempt to validate the Nevada divorce, but merely holds in effect that plaintiff's delay prevents her from obtaining the aid of a court of equity in the premises. When attack is made on a foreign decree of divorce, equity will accord or refuse its aid upon general equitable principles. Among the circumstances which may be material are "whether complainant has been guilty of laches or undue delay, what the nature of the new suit is, and the motive or object of complainant in bringing it."Hollingshead v. Hollingshead, 91 N.J. Eq. 261, at 274(Buchanan, V.C., 1920). See also Cope v. Cope,123 N.J. Eq. 190 (E. A. 1937), and Sleeper v. Sleeper,129 N.J. Eq. 94 (E. A. 1940).
To constitute laches, there must not only be delay but the delay must have been prejudicial to the opposite party. Hinnersv. Banville, 114 N.J. Eq. 348 (E. A. 1933). Yet the length of the delay cannot be ignored. If the delay be short, the resulting prejudice must be great and clearly established or the defense of laches will not prevail. But where there has been a delay for many years, slight prejudice will suffice.
In the case before us, the intervenor has given the best years of her life to the defendant, while plaintiff stood by, acquiescing in the situation. The attack on the divorce is, of course, an attack on the intervenor's marriage. Coming at this late day, it is more harmful to her than if it had been made promptly. The prejudice may not be great but it is sufficient, in connection with the other circumstances which we have recited, to support the decree of the Chancery Division.
 Affirmed. *Page 83