MARY WARREN WOODSON v. COLORED GRAND LODGE OF KNIGHTS OF HONOR OF AMERICA ET AL.

[52 South. 457.]

INSURANCE. *Beneficiaries. Estoppel. Husband and wife. Acquiescence in separation and remarriage.*

> A woman who for many years acquiesced in a separation from her husband and in his subsequent marriage to another, and who herself remarried, is estopped, as against his second wife, to claim the benefits of insurance as his widow.

FROM the chancery court of Warren county.

HON. JAMES STOWERS HICKS, Chancellor.

Mary Warren Woodson, appellant, was complainant in the court below; the grand lodge, and Mary Webster Woodson, ap-

pellees, were defendants there. From a decree partly favorable and partly unfavorable to complainant she appealed to the supreme court, and Mary Webster Woodson, one of the defendants, prosecuted a cross-appeal. The facts are stated in the opinion of the court.

*Henry, Fox & Canizaro,* for appellant and cross-appellee.

The chancellor found as a matter of fact that the marriage relation existing between Thomas Woodson and complainant, Mary Warren Woodson, was never dissolved, and that she was his legal wife at the time of his death, and in accord with his feeling, he gave complainant a decree for $250, the amount which had not been paid by the lodge.

The records of Warren county show affirmatively that no divorce was ever had between Thomas Woodson and complainant herein, in Warren county, although Woodson resided in Warren county all his life. The evidence of complainant shows that she never brought suit for divorce anywhere, nor had she been served with any process for divorce. The evidence in this case also shows and is undisputed, that Thomas Woodson and Mary Warren Woodson, complainant, met each and every year, from the time of the separation up to the time of his death, and there was never an intimation of divorce between the parties, and no suit for divorce was ever instituted.

The case of *Alabama, etc., Ry. Co. v. Beardsley,* 79 Miss. 417, 30 South. 660, is the leading case on the subject under discussion and all that is held in the case, is that the party assailing the second marriage must prove that the first marriage was not dissolved. But after all, this is merely a presumption and when the proof is adduced sufficient to rebut that presumption, as in this case, then the first marriage is valid, and the second marriage void.

In *Colored Knights of Pythias v. Tucker,* 92 Miss. 505, 46

South. 51, Justice MAYES speaking for the court says, in speaking of this presumption: "But after all it is but a presumption of law, not conclusive, and therefore capable of being overcome by such testimony as satisfies the minds of the jury, that there is no valid marriage. With strong presumption raised by the law in favor of the validity of marriage, an alleged marriage is not to be declared invalid, except upon the clearest and strongest proof, but when competent evidence has been submitted going to disprove marriage, the weight and sufficiency of that marriage evidence, is a matter for the jury."

The court in the case at bar, sitting as a jury finds that the testimony adduced by complainant was sufficient to satisfy his mind and overthrow the presumption that the marriage had been dissolved.

If, as it is shown here, there had been no divorce between complainant and deceased prior to 1888, when deceased attempt to marry Mary Webster, such a second marriage is null and void, and being void, in its inception or *abinitio,* no decree is necessary to avoid it and it cannot be made valid by subsequent ratification of the parties.

The law of the order made it imperative upon the part of the officer who pays the money to pay to the widow or other heirs with no discretion whatsoever, left to the officer, to the lodge or to the member. And it further made it the duty of the grand dictator and reporter to see that the money was paid to the class mentioned in the by-laws. The policy itself does not change our contention, for the defendant, by the terms of said policy, also bound itself to pay to the heirs and lawful representatives of Woodson.

The payment by the lodge to Mary Webster was, and is not in accord with the by-laws of the defendant order, and therefore cannot be said to discharge defendant's obligation to complainant. Nor can defendant be heard to say, in the face of their

by-laws, and of the law of this state, what may have been the intention of Woodson. Neither the society, nor the member, nor the two combined, had any power to issue certificates not in clear accord with the by-laws, nor to pay or divert the funds from the class prescribed in said by-laws.

Both defendants in this case were estopped to deny the provisions of the by-laws that the money is only payable to the widow and other heirs of Woodson. The society is bound by the by-laws and Mary Webster is charged with a notice of the by-laws and the statute governing fraternal orders. *Rose v. Wilkins,* 78 Miss. 401; *Woodmen v. Woodruff,* 80 Miss. 546; *Carson v. Bank,* 75 Miss. 167.

*Anderson & Vollor,* for appellee and cross-appellant Mary Webster Woodson.

There was a time extending over a period of nineteen and a half years from the date of the second marriage of Woodson to Mary Webster to the date of his death, when the complainant by every rule of law, equity and justice was called upon to speak out as to the relationship between herself and Woodson, and also as to the illegality of the relationship claimed by her to be existing between him and Mary Webster; she was in duty bound to protest against, object to, and remonstrate with her husband and the woman with whom he was living and claiming to be his wife, in regard to the meretricious relations she claimed were being kept up between them. Because she kept silent along that line, she suffered and permitted an innocent woman to believe that she was the lawful wife of the legal husband of this complainant, and she suffered and permitted them in that unlawful and criminal relation to bring into the world eight innocent children to suffer the odium for all time to come, of illegitimacy; and she suffered and permitted, by reason of that fact, also, the order to issue the policy upon his life payable to the mother of

these children after his death; also suffered and permitted this same mother and wife to pay these assessments out of her own hard earnings during the time of his invalidism; and, to cap the climax, suffered and permitted the order to pay the money on the policy to this same woman, who they believed and had every reason to believe was legally and in all good conscience entitled thereto.

In Joyce on Insurance, § 1055, it is said: "Although it is held that by the term wife is meant a lawful wife, yet a woman has an insurable interest in the life of a man with whom she has been living as his wife, notwithstanding there has been no marriage ceremony, where he has openly and notoriously recognized her as his wife, and although she is named in the policy by another name than that of his wife."

*W. J. Latham,* for appellee grand lodge.

MAYES, C. J., delivered the opinion of the court.

This suit is instituted by Mary Warren Woodson against the Colored Grand Lodge of Knights of Honor and Mary Webster Woodson. The purpose of the suit is to compel the Colored Grand Lodge Knights of Honor to pay complainant the sum of $500 and interest, which is claimed to be due under a certain life insurance policy taken out in the order by one Thomas Woodson. The policy of insurance was taken out by Thomas Woodson some time in July, 1907. The fruits of the policy, by the terms of the contract, are made payable "to the widow or heir of the said Thomas Woodson," and became payable at the death of the insured, which occurred in November, 1907. This contest is really between Mary Warren Woodson and Mary Webster Woodson; each claiming to be entitled to the proceeds of the policy by virtue of the fact of being the widow of deceased.

The only question in the case is: Which of these two women

is entitled to the benefit of this policy? The facts are hardly disputed, and the question is practically one of law. It appears that in 1880 the complainant, Mary Warren Woodson, married the deceased in Vicksburg. After the marriage complainant and deceased lived together for about three years, and separated; Thomas Woodson remaining in Vicksburg, as it seems, and Mary Warren Woodson going across the river into Louisiana, but frequently visiting relatives in Vicksburg. Eight years after the marriage of complainant and deceased, and five years after the separation, Thomas Woodson married a second time; this time marrying Mary Webster, who became Mary Webster Woodson, second alleged wife, and defendant in this suit. After the second marriage, deceased continued to live with the second wife, recognizing and holding her out as such, from 1888 until his death in November, 1907, and there were born to them eight children during this period of time. In the meantime Mary Warren Woodson, the first wife, some time after the separation, and at a time not clearly shown, but soon after the separation, married one Reason Blew in Louisiana. It will thus be seen that we have three presumably valid marriages—the first marriage between Mary Warren Woodson and Thomas Woodson, in 1880; the second being between Thomas Woodson and Mary Webster, in 1888; the third being that of Mary Warren Woodson with Reason Blew, at a time after her separation, but not clearly stated. The policy was taken out by Thomas Woodson in July, 1907, twenty-four years after the separation from the first wife and nineteen years after his marriage with his second wife, and while he was living with the second wife; and it is certain that the insurance, so far as Thomas Woodson's intentions may be gleaned from his acts, was for the benefit of his second wife, Mary Webster Woodson. Throughout this nineteen years Thomas Woodson lived and cohabited with his second

wife, and held her out to the world as such.    During this nineteen years the complainant was paying visits to the city of Vicksburg, and knew all of this, and knew that children were being born to her first husband and the alleged second wife, but never made complaint or raised her voice in remonstrance, but permitted them to continue the relation. . In addition to this, and by her conduct recognizing the lawfulness of their relation, she contracted another marriage.    In short, the conduct of the alleged first wife shows that she lived and acted in accordance with the right of all parties to this suit to contract a valid marriage.

The question now is: Will she be permitted to assert that which is at variance with the condition she has accepted, and in accordance with which she has lived, in order to make herself the beneficiary under the insurance policy ?    It may be here stated that no divorce is shown, and the complainant denies that any was obtained.    No question is involved in this case, except as to which one of these women shall have this money.    The complainant is not seeking to make lawful a marriage improvidently entered into, in order that offspring may be legitimatized ; but, if the object of her suit is accomplished, it will bastardize children, and convict her of bigamous relations deliberately entered into.    She must recover, if at all by proving her own turpitude, out of which she profits by the loss of others.    Under these facts is complainant estopped ?    No question of heirship is involved here; that is, there is no contest between innocent heirs for the purposes of settling which set are legitimate heirs, each set being equally innocent of participation in the wrong, but being the mere victims of other people's wrong.    In such case, of course, nothing but the fact of who were the legal heirs could ever settle such controversy.    Under the facts of this case we have no hesitancy in saying that the first wife is estopped to introduce testimony proving her own turpitude, and

contradicting that condition of affairs which she by her conduct has assented to be the true condition, and in accordance with which she has lived and acted for nineteen years.

We do not at all say that, where the question arises in proper shape, the true condition of affairs in regard to marriage may not be shown; but we hold that under the facts of this case the complainant is estopped by her conduct, under every principle of law and equity. We are not aware of any case in our own reports that is in point here; but the case of *Richardson's Estate,* 6 Pa. Co. Ct. R. 653, is almost identical with the facts of this case. On principle, we do not know of any reason why the rules of estoppel should not be applied as strictly to the facts of this case as any other civil contest. It appears in the record that the grand lodge had already paid to the second wife the sum of $275 on the $500 policy at the time of the institution of this suit, leaving a balance of only $225, and the trial court decreed that the Knights of Honor should not be liable for this $275, but decreed that the complainant should recover a judgment for the balance of $225. From this judgment there was an appeal and cross-appeal; the complainant appealing from that part of the judgment which denied her the right to recover the whole of the policy, and the second wife appealing from that part of the judgment which decreed that the complainant should recover the $225, or balance.

This being the case, the decree is affirmed on direct appeal, and reversed on cross-appeal, with a decree here in favor of cross-appellant for the sum of $225.

So ordered.                    *Reversed on cross-appeal.*