[Civ. No. 15096.   First Dist., Div. One.   June 23, 1952.]

MOLLIE WENDELL, Appellant, v. ABRAHAM
WENDELL et al., Respondents.

Philip Gordon for Appellant.

Morris Oppenheim for Respondents.

PETERS, P. J.—By this complaint filed on October 31,
1949, plaintiff, Mollie Wendell, first wife of Abraham Wen-
dell, seeks to attack and have set aside, on the ground of fraud,
a divorce secured by Abraham in 1910, even though both
parties thereafter remarried, Abraham in 1914, and Mollie
in 1915.   The trial court held, among other things, that, under
the circumstances, Mollie was estopped from challenging the
decree.   Mollie appeals.   There is no merit to this appeal.

Mollie was born in Poland about 1880.   She and Abraham
were married in England in 1898.   Thereafter, Abraham mi-

grated to New York City where he was joined by Mollie in 1902 or 1903. Thereafter, the parties lived together at various places in New York City and Brooklyn. They had three children.

Mollie testified that Abraham deserted her in 1908 or 1909, leaving her without funds. She also testified that thereafter the two corresponded and that she kept him informed of her address. This correspondence was in Yiddish.

In 1910, Abraham, in San Francisco, obtained an interlocutory decree of divorce upon the alleged ground of Mollie's desertion. ■ The affidavits for publication of summons and mailing in that proceeding gave the then address of Mollie as "176 East Broadway" in New York City. That is a nonexistent address. Mollie did not have any actual knowledge of the divorce action during its pendency. Whether this false address was given fraudulently or as a result of mistake does not clearly appear. In either event, the divorce decree, when secured, was subject to being set aside as having been secured on false affidavits as to residence. (*Rivieccio* v. *Bothan,* 27 Cal.2d 621 [165 P.2d 677] ; *Parsons* v. *Weis,* 144 Cal. 410 [77 P. 1007] ; *Wells* v. *Zenz,* 83 Cal.App. 137 [256 P. 484] ; *Aldrich* v. *Aldrich,* 203 Cal. 433 [264 P. 754].) ■ Extrinsic fraud that deprives the adversary of fair notice of a hearing may exist even though such was accomplished by mistake. Actual fraud is not required. (*Antonsen* v. *Pacific Container Co.,* 48 Cal.App.2d 535 [120 P.2d 148] ; *Rogers* v. *Mulkey,* 63 Cal.App.2d 567 [147 P.2d 62] ; *Chung Gee* v. *Quan Wing,* 103 Cal.App.2d 19 [229 P.2d 50] ; *Wells* v. *Zenz,* 83 Cal.App. 137 [256 P. 484].) Thus, this divorce, when secured, was subject to being set aside because of this fraud.

Mollie testified that she did not learn of the divorce until 1949, and also testified that until then she did not even know of the existence of divorce as an institution. She explained this lack of knowledge by testimony that she cannot read or write, that she is an immigrant, and that she has always lived where the neighbors spoke Yiddish. If this testimony were uncontradicted, and had it been believed by the trial court, it would have warranted, under the authorities cited above, setting the divorce decree aside. But this testimony is not uncontradicted, and was not believed by the trial court.

The record shows that Abraham married his present wife, Minnie, in 1914. Mollie married a Charles Miller in 1915, and admittedly lived with him as his wife until his death in 1923. Mollie attempted to explain her remarriage on the

theory that she did not know of Abraham's divorce, but simply believed that because Abraham had remarried she could do likewise.

There is substantial, ample and credible testimony, by many witnesses, that Mollie knew of Abraham's remarriage in 1914, and at that time knew of the divorce. The trial court found that ever since 1914 "plaintiff had knowledge that defendant Abraham Wendell had obtained a decree of divorce from plaintiff; and in this behalf the Court further finds that subsequent to the entry of the said final decree of divorce, plaintiff, well knowing that she, the said plaintiff, and the defendant, Abraham Wendell, were divorced, and relying thereon and ratifying the final decree aforesaid, did during the year 1915 marry one Charles Miller in the City of New York, State of New York; and the Court further finds that during the year 1914 at the said City of New York, State of New York, plaintiff stated to defendant Abraham Wendell, that he, the said defendant Abraham Wendell, ought to have a wife; and the Court finds that plaintiff introduced said defendant Abraham Wendell to the defendant Minnie Wendell and stated to the defendant Abraham Wendell that defendant Minnie Wendell would make a good wife for him; and that thereafter and on the 8th day of May, 1914, defendant Abraham Wendell and defendant Minnie Wendell intermarried in the said City of New York, and then and there became and ever since have been and now are, husband and wife; and that at the time of the said marriage of defendant Abraham Wendell and defendant Minnie Wendell, plaintiff had knowledge of the said marriage and had knowledge of the said divorce, and the Court further finds from the testimony that plaintiff has admitted under oath that she, the said plaintiff, did marry the said Charles Miller in the year 1914 [sic 1915], and has likewise admitted under oath that she knew of the marriage of said defendant in the year 1914; and the Court further finds that subsequent to the marriage of defendants Abraham Wendell and Minnie Wendell, and subsequent to the marriage of plaintiff and the said Charles Miller, plaintiff visited the home of said defendants in the City and County of San Francisco on a number of occasions, and that plaintiff well knew of the said final decree and well knew that the marriage of plaintiff and said defendant Abraham Wendell had been dissolved by this Court; and that by reason of all and singular the premises, plaintiff is estopped and concluded from maintaining this action and from calling the validity of

the said interlocutory and final decrees of divorce into question . . ."

These findings are supported by ample, substantial and credible testimony. While it is true that Mollie and some of her witnesses denied some of this evidence, that conflict was for the trial court. It has resolved that conflict against Mollie. Its findings, being supported, are binding on this court.

If the findings be accepted as true, then, it is quite clear, that even though the divorce secured in 1910 may have been invalid, the trial court was justified in concluding that by her remarriage, under the circumstances disclosed by the evidence, Mollie was estopped from challenging the validity of that divorce. ■ The law is well settled in this state that one who remarries with knowledge of and in reliance on a divorce secured by the other spouse, is estopped to deny the validity of the divorce. (*Bruguiere* v. *Bruguiere*, 172 Cal. 199 [155 P. 988, Ann.Cas. 1917E 122] ; *Kelsey* v. *Miller*, 203 Cal. 61 [263 P. 200] ; *In re Kyle*, 77 Cal.App.2d 634 [176 P.2d 96] ; *Rediker* v. *Rediker*, 35 Cal.2d 796 [221 P.2d 1].)

The other contentions of appellant are so lacking in merit that they require no consideration.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 23, 1952, and appellant's petition for a hearing by the Supreme Court was denied August 21, 1952.