[Civ. No. 19231.   Second Dist., Div. Three.   Mar. 13, 1953.]

.UNION BANK AND TRUST COMPANY et al., Respondents,
v. ELSIE GORDON, Appellant.

Stahlman & Cooper, Loeb & Loeb, Grant B. Cooper, Harry L. Gershon and Herman F. Selvin for Appellant.

Kenny & Morris and Robert W. Kenny for Respondents.

VALLÉE, J.—Plaintiff, as special administrator of the estate of Leo Gordon, sued Elsie Gordon to quiet title to various parcels of realty. Elsie Gordon answered and filed a cross-complaint, naming Sara Gordon as cross-defendant, in which she prayed that title be quieted in her. Sara Gordon answered the cross-complaint. The judgment decreed that Sara Gordon, subject to administration of the estate of Leo Gordon, and Elsie Gordon, is each the owner of an undivided half interest in the property. Elsie Gordon moved the court to vacate the judgment and to have another and different judgment entered. The motion was denied. Elsie Gordon appeals from the judgment and from the order denying her motion.

The facts which are undisputed are these:

1. December 21, 1921—Leo Gordon and Sara Gordon were married in New York. One child was born to them, Lucille.

2. June 3, 1927—Sara obtained a decree of separate maintenance against Leo in New York.

3. March 26, 1928—Leo moved to Los Angeles where he was domiciled at all times until his death.

4. May 31, 1929—Leo sued Sara for divorce in Nevada. Sara was served by publication in Nevada and personally

served in New York, but did not answer or appear in the action. Sara was never in Nevada.

5. July 22, 1929—A final decree of divorce was granted Leo in the Nevada action.

6. July 29, 1929—Leo married Elsie Gordon in California. At the time of their marriage Elsie knew that Leo had been divorced from Sara in the manner described above. Leo and Elsie lived together in California as man and wife until Leo's death. One child was born to them, Arlene.

7. September 6, 1936—Sara married Milton Lewis in New York. Within two years of the marriage Elsie learned of it. Elsie testified that thereafter, in reliance on the foregoing facts and the failure of Sara to challenge the validity of the Nevada decree, she continued to cohabit with Leo as his wife and to work with him in their business until his death. She also testified she would have done none of these things had Sara at any time successfully challenged the validity of the Nevada decree prior to Leo's death.

8. November 14, 1939—Leo and Elsie were without funds or assets.

9. Between August 29, 1947, and July 31, 1949—The property which is the subject of this litigation was purchased at various times during this period by Leo and Elsie solely with funds accumulated by them through their joint efforts after November 14, 1939. The property was conveyed to and intended to be held by them in joint tenancy, and was held by them as joint tenants until Leo's death.

10. October 17, 1949—Sara obtained a decree of the Supreme Court of New York annulling her marriage to Milton. The bill, filed by Sara, alleged that she and Milton "were duly married" in New York. on September 6, 1936; that their marriage was the second marriage for both of them; and that Milton had induced her to marry him by fraud and misrepresentation as to his financial means to support her and Lucille, the daughter of Sara and Leo. The New York court found that Sara and Milton "were duly married" on September 6, 1936, in New York and that said marriage was the second marriage for both of them. The decree annulled the marriage on the alleged ground of fraud.

11. May 9, 1950—Leo died in the county of Los Angeles. He left a will dated November 21, 1943, which was admitted to probate on January 5, 1951, in which he bequeathed and devised all of his property, one-half to Elsie, and one-

fourth each to Lucille and Arlene. Plaintiff was appointed special administrator of the estate.

The court found that: At all times since December 21, 1921, Leo was the lawful wedded husband of Sara; the marriage of Leo and Elsie was void; Elsie never was the lawful wedded wife of Leo; the Nevada decree obtained by Leo was void; Sara is not estopped or barred by laches to assert her claim to the property involved by reason of the invalidity of the Nevada decree; the property was ' purchased by Leo and Sara during their marriage solely out of their community property; Leo, during his lifetime, conveyed an undivided half interest in the property to Elsie. The judgment decreed that Sara, subject to administration of Leo's estate, and Elsie, is each the owner and entitled to the possession of ·an undivided half interest in the property.

The contest is actually between Elsie and Sara. Elsie asserts, as ground for reversal, that on the undisputed facts Sara is estopped to attack or assert the invalidity of the Nevada decree, and that she (Elsie) is the owner of the property in its entirety. We have concluded her contention must be sustained.

■ It is axiomatic that one who is silent when he ought to speak cannot speak when he ought to be silent. (See Code Civ. Proc., § 1962(3).) ■ It is established doctrine in this state that a spouse who remarries with knowledge of and in reliance on a decree of divorce secured by the other spouse, is estopped from contesting the validity of the decree. In the recent case of *Wendell* v. *Wendell*, 111 Cal.App.2d 899 [245 P.2d 342], the court said (p. 902): "The law is well settled in this state that one who remarries with knowledge of and in reliance on a divorce secured by the other spouse, is estopped to deny the validity of the divorce. (*Bruguiere* v. *Bruguiere*, 172 Cal. 199 [155 P. 988, Ann.Cas. 1917E 122]; *Kelsey* v. *Miller*, 203 Cal. 61 [263 P. 200]; *In re Kyle*, 77 Cal.App.2d 634 [176 P.2d 96]; *Rediker* v. *Rediker*, 35 Cal.2d 796 [221 P.2d 1].)"[1] *Bruguiere* v. *Bruguiere*, 172 Cal. 199 [155 P.2d 988, Ann.Cas. 1917E 122], held that a wife, divorced by her husband in a court of a state other than that of his residence, was estopped from attacking the decree because of her subsequent marriage to another. The rule was reaffirmed in *Kelsey* v. *Miller*, 203 Cal. 61, 86-87 [263 P. 200]. (See, also, *Hensgen* v. *Silberman*, 87 Cal.App.2d 668 [197 P. 2d 356]; *Adoption of D. S.*, 107 Cal.App.2d 211, 214 [236

---

[1] The Supreme Court unanimously denied a hearing.

P.2d 821]; *Appeal of Richardson*, 132 Pa. 292 [19 A. 82]; *Woodson* v. *Colored Grand Lodge of K. of H.*, 97 Miss. 210 [52 So. 457]; *Harper* v. *Fears*, 168 Miss. 505 [151 So. 745, 93 A.L.R. 341]; *Joy* v. *Miles*, 190 Miss. 255 [199 So. 771]; *Moore* v. *Robinson*, 139 S.C. 393 [137 S.E. 697]; Anno. 28 A.L.R. 1126.)

The accepted rule is declared in the Restatement as follows: ''The validity of a divorce decree cannot be questioned in a proceeding concerning any right or other interest arising out of the marital relation, either by a spouse who has obtained such decree of divorce from a court which had no jurisdiction, or by a spouse who takes advantage of such decree by remarrying.

''*Comment*: . . . a spouse who treats as valid a decree of divorce by remarrying is precluded from subsequently disputing the validity of the decree although he neither obtained the decree nor was personally before the court which rendered it. *Illustrations*: 1. A obtains a divorce in a state where neither he nor his wife is domiciled. B, his wife, knowing that the decree has been granted, marries another man. A dies. B is barred from claiming a widow's share in A's estate.'' (Rest. Conflict of Laws, § 112.)

To refuse to permit Sara to contest the validity of the Nevada decree does not mean that the courts of this state recognize the Nevada decree as valid, but only that it is not open to her in this action to say it is void. (*Watson* v. *Watson*, 39 Cal.2d 305, 307-308 [246 P.2d 19]; *Bernheimer* v. *Bernheimer*, 103 Cal.App.2d 643, 647 [230 P.2d 17].)

Sara urges that Civil Code section 150.1, enacted in 1949 (Stats. 1949, ch. 1292, p. 2275), prevents application of the estoppel rule. Section 150.1 reads: ''A divorce obtained in another jurisdiction shall be of no force or effect in this State, if both parties to the marriage were domiciled in this State at the time the proceeding for the divorce was commenced.'' The section prohibits the giving of force or effect to the divorce. ■ In holding that a spouse is estopped from asserting that a decree of divorce is invalid a court does not give any force or effect to the decree. It assumes the decree is invalid and of no force or effect. It merely says that because of the particular circumstances the spouse is precluded from asserting its invalidity.

■ The doctrine of estoppel is not inconsistent with section 150.1. ■ The section merely declares a rule of

nonrecognition which has always existed in California. It has been invariably held that a foreign divorce decree procured on simulated residence has no force or effect in this state. (*Crouch* v. *Crouch*, 28 Cal.2d 243, 250 [169 P.2d 897] and cases there cited.) ▮▮▮ The rule of estoppel has never been considered by the courts of this state to be inconsistent with the rule that a foreign divorce decree obtained on simulated residence has no force or effect. In applying the rule of estoppel the courts have assumed that the decree was invalid and therefore of no force or effect. (*Harlan* v. *Harlan*, 70 Cal.App.2d 657 [161 P.2d 490].) We cannot hold that a mere statutory declaration of what had theretofore been a rule of decision is so inconsistent with the rule of estoppel as to preclude application of the latter rule.

Massachusetts and New Jersey have had nonrecognition statutes for many years. Notwithstanding those statutes, the courts of those states apply the rule of estoppel when the circumstances are appropriate. *Langewald* v. *Langewald*, 234 Mass. 269 [125 N.E. 566, 39 A.L.R. 674], a libel by a wife for divorce, is in point. A statute of Massachusetts provided that if an inhabitant of that commonwealth went into another state or country to obtain a divorce for a cause which occurred while the parties resided in Massachusetts, or for a cause which would not authorize a divorce which by its laws, such divorce should be of no force or effect in Massachusetts. (Rev. Laws [1920], ch. 152, § 35.) The defendant husband had obtained a divorce in Wyoming under circumstances which rendered it of no force or effect under the Massachusetts statute. The wife had voluntarily appeared in the Wyoming action, agreed to a property settlement, and had taken advantage of the decree by accepting the payments which it ordered the husband to make to her. The Massachusetts court said the decree was of no force or effect in that commonwealth, but held that the statute did not impair the doctrine of estoppel, saying (125 N.E. 568): ''Having done this, the wife as was said in *Loud* v. *Loud*, 129 Mass. 14, 19, 'cannot treat' the husband's 'subsequent marriage and cohabitation with another woman as a violation of his marital obligations to herself. The defense is allowed [to the husband], not upon that ground of a strict estoppel, but because her own conduct amounts to a connivance at or acquiescence in, his subsequent marriage.' *Chapman* v. *Chapman*, 224 Mass. 427, and cases cited at 435, 113 N.E. 359, L.R.A. 1916F 528; *Bidwell* v. *Bidwell*, 139 N.C. 402, 412, 52 S.E. 55, L.R.A. (N.S.) 324, 111 Am.St.Rep 797; *Nichols* v. *Nichols*,

25 N.J.Eq. 60; *Fairchild* v. *Fairchild,* 53 N.J.Eq. 678, 34 Atl. 10, 51 Am.St.Rep 650; *Andrews* v. *Andrews,* 176 Mass. 92, 96, 57 N.E. 333.'' The libel was dismissed. (See, also, *United States* v. *21.91 Acres of Land in Hampden County, Mass.* (D.C. Mass.) 50 F.Supp. 797.) *Andrews* v. *Andrews,* 176 Mass. 92 [57 N.E. 333], cited by Sara, is not analogous: The question of estoppel by remarrying was not involved. The court did not hold that an estoppel would never lie, but only that in the circumstances of that case an estoppel had not been established. As will be noted the Andrews case was cited as authority for the holding in the Langewald case. It was distinguished in *Chapman* v. *Chapman,* 224 Mass. 427 [113 N.E. 359, 361, L.R.A. 1916F 528], in which a wife, who had remarried after rendition of an assertedly invalid divorce decree, was held estopped to assert its invalidity. *Bruguiere* v. *Bruguiere,* 172 Cal. 199 [155 P. 988, Ann.Cas. 1917E 122], was cited as authority for the holding.

*Sleeper* v. *Sleeper,* 129 N.J.Eq. 94 [18 A.2d 1], applied the rule of estoppel notwithstanding a nonrecognition statute. The bill was by a wife for separate maintenance and to void an earlier Nevada divorce decree obtained by her husband. The wife had appeared in and contested the Nevada action. About two years after the Nevada decree the husband remarried. A New Jersey statute provided that full faith and credit should be given to a decree of divorce by a court of competent jurisdiction in another state when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in other specified New Jersey statutes. One of the other specified statutes required, as a condition upon the privilege of instituting a suit for divorce in New Jersey, bona fide residence there for a period of at least two years next preceding the commencement of the suit. The husband had not resided in Nevada the required two years. The suit for separate maintenance was filed four and one-half months after the husband remarried. The court held (18 A.2d 4): "New rights had arisen on the assumption of a legal status which Mrs. Sleeper, over a long period, allowed to stand unchallenged notwithstanding full opportunity to challenge. Whether or not the facts incident to, and the circumstances under which she entered into and vigorously conducted her defense in, the Nevada suit would, by themselves, bar the relief now sought is not determined; but those facts and circumstances, followed by her long inaction and the intervention of the new mar-

riage contracted in good faith after a suitable waiting period, do, in our opinion, serve to place her in laches and to bar her from the relief prayed in her bill.''

The earlier case of *Hollingshead* v. *Hollingshead,* 91 N.J. Eq. 261 [110 A. 19], a decision by a New Jersey trial court, cited by Sara, is factually dissimilar. The suit was by a wife for maintenance. The wife had previously secured a decree of divorce in Nevada. The question was one of pleading. The pleading alleged that the husband had caused the wife to secure the divorce by fraud and duress. The court held that if the husband's alleged fraud and duress were proved it precluded any estoppel which might have arisen from the fact that the wife, who was attacking the Nevada decree, had herself procured it. It was expressly recognized that an estoppel would lie in appropriate situations, the court saying (110 A. 24) : ''The true rule, then, would seem to be that, where a suitor comes into equity and asks for relief, notwithstanding a foreign decree of divorce, which, if valid, would be a bar to his or her suit, which decree is void for lack of jurisdiction, but which was obtained by the present complainant, equity will examine into all the facts, and will accord or refuse its aid upon general equitable principles, according to whether or not it deems it conscionable so to do. Among the facts and circumstances which are or may be material factors in such a controversy are . . . whether there are children by such second marriage; whether the complainant has 'accepted the benefits' of the divorce, such as alimony, or by marrying again; . . ..'' To claim that the Hollingshead case is an authority in support of Sara, in the case at bar, is to ignore the distinction the New Jersey court clearly indicated in its opinion in that case.

We hold that Civil Code, section 150.1, does not prevent application of the rule of estoppel.

At no time subsequent to the date of the Nevada decree and prior to the death of Leo did Sara question, or take any action to assert the invalidity of, that decree. She acquiesced in it and married Milton. She made no complaint or protest, no claim of invalidity, no attempt to assert any interest in the property being accumulated by Elsie and Leo. She did not seek to have, nor did she have, her marriage to Milton annulled on the ground she had not been validly divorced from Leo, but on the ground of Milton's fraud. She permitted Elsie to believe that she (Elsie) was the lawful wife of Leo, to live and care for him as a dutiful spouse, to secure

the benefits and incur the obligations incident to a valid marriage, and to work and pool her earnings with his in order to contribute to their joint savings and to enhance what she was led to believe was their community property. Sara lost nothing by Leo's death. In fact, from the time of the Nevada decree, there was a tacit relinquishment by each of all claims upon the other. Sara contributed neither money nor her industry nor prudence to the accumulation of the property in which she now claims an interest. The property was all acquired while she was married to Milton. She is estopped by every principle of law and equity from attacking the Nevada decree or asserting its invalidity.

■ A putative marriage is one which has been solemnized in due form and celebrated in good faith by both parties but which by reason of some legal infirmity is either void or voidable. On the facts it cannot be questioned that Elsie entered into the marriage and thereafter lived with Leo as husband and wife in good faith and under the bona fide belief that the marriage was valid. ■ It is the law in this state that on dissolution of a putative marriage the property which the de facto spouses have acquired as a result of their joint efforts is to be treated as though it was the accumulation of a valid marriage. *Estate of Krone,* 83 Cal.App.2d 766 [189 P.2d 741], is in point. In the Krone case Fanny married Isaac believing in good faith that she had been validly divorced, whereas in fact a final decree had not been entered. They lived together as husband and wife, and by their efforts accumulated property which they agreed should be joint and should go to the survivor on the death of the other. After Isaac died, his children by the first marriage claimed and were awarded half of that property. In modifying the judgment so as to award all of the property to the putative wife the court said (p. 769) : "[T]he preponderant holdings of the appellate courts coincide with the view that upon the dissolution of a putative marriage by decree of annulment or by death the wife is to take the same share to which she would have been entitled as a legal spouse. However, none of the authorities reviewed involved a consideration of the statute subsequently enacted whereby the surviving spouse of a valid marriage inherits the entire estate in event of intestacy. (Prob. Code, § 201.) But the logic appears irrefutable that if according to statute the survivor of a valid, ceremonial marriage shall be entitled to take all of the community estate upon its dissolution, then by parity of reasoning why should not

the wife inherit the entire estate of a putative union upon the death of her husband intestate? Clearly she does inherit all.

"That appellant herein should be entitled to the inventoried estate is implemented by the finding that she and decedent 'were partners with joint and equal rights as partners,' and that all the property of the estate was acquired by the parties during the marriage. But aside from the extraordinary services rendered by appellant she justly claims the estate by virtue of the authorities above reviewed, pursuant to section 201, *supra*. This section had not been enacted at the time of the pronouncement of the Coats [160 Cal. 671 (118 P. 441, 36 L.R.A.N.S. 844)] and. Schneider [183 Cal. 335 (191 P. 533, 111 A.L.R. 1386)] cases and for that reason it was not mentioned in either of them which may explain the silence of the subsequent decisions upon its provisions. However, in view of the positive declarations in such later decisions it would now be contrary to established law to deny to this putative wife her rights as a surviving spouse to inherit the total of the gains of the putative marriage." And the rule is applicable in a contest between two spouses. The fact that the contest in *Estate of Krone* was between a putative wife and children of a first wife does not make it any less an authority. The children in the Krone case were estopped because as heirs of their ancestor, the first wife, they were in privity with her, and were thus bound by an estoppel which bound the ancestor. (See *Estate of Davis*, 38 Cal.App.2d 579, 585 [101 P.2d 761, 102 P.2d 545]; 19 Am.Jur. 811, § 155.) In *Mazzenga* v. *Rosso*, 87 Cal.App.2d 790 [197 P.2d 770], the first wife contended that "The rights of a 'putative wife'· do not prevail over those of the '*de jure*' wife upon the death of the bigamous husband." The court answered by applying the rule stated in *Estate of Krone, supra,* and held that the putative wife was entitled to all the property. There, as here. the property had been held in joint tenancy by the putative wife and the deceased husband.

The suggestion that Elsie must have known that the Nevada decree was invalid is without foundation in the evidence. It is contrary to her uncontradicted testimony. ▮ It cannot be said that knowledge of a laywoman that another obtained a Nevada decree of divorce, after complying with the residence requirements of that state, conclusively establishes that she knew the divorce was invalid. When we note the great difficulty courts and lawyers have had in determining when an out-of-state divorce decree is or is not valid, it would be incongruous indeed to charge a laywoman with absolute

knowledge merely because she knew that a divorce decree had been rendered by a state other than that of the residence of the parties. (See *Williams* v. *North Carolina,* 317 U.S. 287 [63 S.Ct. 207, 87 L.Ed. 279, 143 A.L.R. 1273] ; *Williams* v. *North Carolina,* 325 U.S. 226 [65 S.Ct 1092, 89 L.Ed. 1577, 157 A.L.R. 1366] ; *Sherrer* v. *Sherrer,* 334 U.S. 343 [68 S.Ct. 1087, 1097, 92 L.Ed. 1429, 1 A.L.R.2d 1355] ; *Coe* v. *Coe,* 334 U.S. 378 [68 S.Ct. 1094, 1097, 92 L.Ed. 1451, 1 A.L.R.2d 1376].) There is not a scintilla of evidence that Elsie knew that Leo had not been validly divorced from Sara. To assume that she did know would impute to her an intention to enter into a meretricious relation. Sara obviously believed the divorce was valid. A different belief cannot be attributed to Elsie. (See *Estate of Krone,* 83 Cal.App.2d 766, 768 [189 P.2d 741].)

We hold, on the undisputed facts, as a matter of law, that Sara has no interest in the property, and that the entirety is vested in Elsie.

Since the facts are not disputed, Elsie suggested, in her opening brief, that in the event of a reversal it should be with directions to render judgment in her favor. Sara does not take issue with the suggestion. Accordingly she is deemed to have acquiesced therein. (*Reininger* v. *Eldon Mfg. Co.,* 114 Cal. App.2d 240, 245 [250 P.2d 4].)

The judgment is reversed with directions to the superior court to amend the findings of fact and conclusions of law in conformity with the views we have expressed,. and to render judgment adjudging that Elsie Gordon is the owner and entitled to the possession of all of the property described in the cross-complaint in its entirety, and that Sara Gordon has no right, title, or interest therein.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 7, 1953. Edmonds, J., was of the opinion that the petition should be granted.