**Richard B. BLACK, Appellant (Defendant),**

v.

**Marieluise Jungbehrens De BLACK, Appellee (Plaintiff).**

**Richard B. Black, Appellant (Defendant),**

v.

**Marieluise Jungbehrens De Black, Appellee (Plaintiff).**

**Nos. 98–164, 98–228.**

Supreme Court of Wyoming.

March 31, 2000.

Representing Appellant: William P. Schwartz of Ranck, Schwartz & Day, LLC, Jackson, Wyoming; and George B. Yankwitt of Robinson, Silverman, Pearce, Aronsohn & Berman, LLP, New York, New York.

Representing Appellee: Rhonda Sigrist Woodard of Burke, Woodard & O'Donnell, P.C., Cheyenne, Wyoming; Marilyn Kite of Holland & Hart, Jackson, Wyoming; and William A. Johnson of Linn & Neville, P.C., Oklahoma City, Oklahoma.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

The major issue in Case No. 98–164 is whether the district court erred in setting aside its order, obtained upon the motion of Richard B. Black (Black), vacating a decree of divorce because Marieluise Jungbehrens De Black n/k/a Marieluise Hessel (Hessel) was unable to satisfy the jurisdictional requirements of Wyo. Stat. Ann. § 20–2–107 (Lexis 1999). In Case No. 98–228, the dis-

pute presented concerns the authority of the district court to award attorney fees and costs to Hessel. We are satisfied that this case can be affirmed on the merits, without doing any violence to the jurisdictional requirements of the statute, by following the rule articulated in *McDougall v. McDougall,* 961 P.2d 382, 384–85 (Wyo.1998). The award of attorney fees and costs to Hessel is justified by the terms of a Separation Agreement that the parties entered into prior to the filing for divorce as well as Wyo. Stat. Ann. § 20–2–111 (Lexis 1999). The Order Concerning Residency, the Order Concerning Motion for Summary Judgment, and the Order Awarding Attorneys Fees and Costs all are affirmed in every respect.

This statement of the issues is found in the Brief of Appellant, filed on behalf of Black, in Case No. 98–164:

> A. Whether, in light of W.S. § 20–2–107's jurisdictional requirement that a plaintiff in a divorce action establish residency by proving actual bodily presence in Wyoming for the 60 days immediately preceding the filing of a divorce complaint, combined with the simultaneous intention to remain in the state permanently, the District Court erred as a matter of law in (i) rescinding its prior order, in which it vacated the divorce decree for lack of jurisdiction because Appellee did not actually reside in Wyoming for the 60 days immediately preceding the filing of her divorce complaint; (ii) disregarding Appellee's lack of actual bodily presence in Wyoming for the statutory period and her failure to establish domicile before the statutory period began; and (iii) basing its determination that Appellee was a resident solely on her stated intention to become a Wyoming resident in the future?
>
> B. Whether the District C[o]urt improperly granted Appellee's Motion for Summary Judgment in the face of disputed issues of material fact regarding (i) whether Appellant's motion under W.R.C.P. 60(b)(6), which provides for relief from a judgment unfairly entered under extraordinary circumstances when a motion is brought within a reasonable time, was time-barred; (ii) whether Appellant was

barred from relief by the principles of *Carlson v. Carlson;* and (iii) whether Appellant was barred from relief by estoppel by benefit?

> C. Whether the District Court improperly awarded Appellee her attorneys' fees and costs without statutory or contractual basis?

In the Brief of Appellee, filed on behalf of Hessel, in Case No. 98–164, the issues are stated in this way:

> I. Was Marieluise Hessel ("Hessel") a Wyoming resident for sixty (60) days immediately preceding the filing of the divorce complaint?
>
> II. Would an erroneous determination regarding Hessel's residency render the Divorce Decree void pursuant to Rule 60(b)(4), W.R.C.P. when the district court had the power to make the determination regarding residency, Richard Black ("Black") failed to contest the issue and Black failed to appeal?
>
> III. Is Black's claim under Rule 60(b), W.R.C.P. time-barred?
>
> IV. Is W.S. § 1–16–401(a)(iii) or (iv) applicable to Black's claim?
>
> V. Is Black barred from relief under Rule 60(b), W.R.C.P. by the principles of *Carlson v. Carlson,* 836 P.2d 297 (Wyo. 1992)?
>
> VI. Did Black's acceptance of benefits retained from the Divorce Decree preclude a challenge to the validity of the Decree?
>
> VII. Is the district court's award of attorney's fees to Hessel authorized by statute and/or by the terms of the Separation Agreement incorporated into the Divorce Decree?

This statement of the issues is found in the Brief of the Appellant (Regarding Attorneys' Fees and Costs), filed on behalf of Black in Case No. 98–228:

> A. Does the district court's award of attorneys' fees to Hessel violate the American rule on attorneys' fees?
>
> B. In *sua sponte* awarding attorneys fees to Hessel, did the district court violate Black's right to due process of law?

C. Did the district court apply the proper legal standards in calculating the reasonableness of Hessel's attorneys' fees?

D. Did Hessel submit sufficient evidence demonstrating the reasonableness of her attorneys' fees?

E. Are the costs awarded to Hessel by the district court authorized under law?

F. Did the district court abuse its discretion in awarding costs without addressing the reasonableness of the costs awarded?

G. Did Hessel submit sufficient evidence demonstrating the reasonableness of her costs?

These arguments are found in the Brief of Appellee in Docket No. 98–228, filed on behalf of Hessel:

I. The district court was authorized to award attorney's fees and costs to Hessel.

II. Black was afforded ample due process in the determination of attorney's fees.

III. The district court's award of attorney's fees is reasonable.

IV. The costs awarded to Hessel are authorized and reasonable.

Black and Hessel were married in Mexico City, Mexico on January 18, 1980. They separated in 1990, and executed a Separation Agreement that is dated January 15, 1992. The Separation Agreement was modified by the parties on December 15, 1992. On June 16, 1993, Hessel filed a Complaint for Divorce in the District Court for the Ninth Judicial District Within and For Teton County, Wyoming. The district court entered the Decree of Divorce on August 13, 1993.

The issues before us in Case No. 98–164 arise out of an attempt by Black to overturn the Decree of Divorce and to obtain for himself certain property awarded to Hessel by the district court. Black proceeded by a motion for relief pursuant to W.R.C.P. 60(b), which he filed on June 19, 1995 and in which he alleged the district court lacked subject matter jurisdiction; Black was not represented by counsel during the negotiation of the Separation Agreement; and he agreed to the Separation Agreement because of Hessel's threats to publicly disclose sensitive personal information, in essence Black asserted a claim of duress. The parties then entered into extensive discovery proceedings, and on March 15, 1996, Black amended his motion for relief, alleging that Hessel had not been a resident of Wyoming for sixty days prior to filing the Complaint for Divorce. Black contended that the Decree of Divorce was void. By April 8, 1996, both parties had filed motions for summary judgment with respect to Black's amended motion for relief. Black argued that the district court was without jurisdiction and that its actions were void, while Hessel contended she was indeed a resident of Wyoming, but even if she was not, Black was barred from relief because of the statute of limitations and estoppel by benefit. On September 26, 1996, the district court granted Black's amended motion for relief, which had the effect of vacating the Decree of Divorce. Hessel appealed from that order.

Black moved for dismissal of Hessel's appeal, asserting that the summary judgment order was not a final appealable order. This Court entered a Minute Order Remanding the Appeal for Determination of Residency, the effect of which was to remand the case to determine Hessel's residency and other matters. After a year of extensive discovery and a three-day evidentiary hearing on Hessel's residency, the district court determined that Hessel had been a resident of Teton County for sixty days immediately preceding the filing of her Complaint for Divorce. After the Order Concerning Residency was entered, Hessel filed a Motion for Summary Judgment on the remaining claims in Black's amended motion for relief, and the district court granted her motion; denied Black's amended motion for relief; and awarded Hessel attorney fees and costs incurred in the defense of Black's motion. Hessel's motion ultimately was granted on February 18, 1998, and at that time, the district court denied Black's Amended Motion to Set Aside the Default Divorce Decree, awarding to Hessel the attorney's fees incurred in defending Black's motion. Black appeals two

orders of the district court: the first is the Order Concerning Residency entered on September 19, 1997, and the second is the Order Concerning Motion for Summary Judgment entered on February 18, 1998.

The facts relating to Hessel's residence are complex. Hessel was a native of Germany where she was born, but she became a citizen of Mexico on November 11, 1969. Prior to her marriage to Black and until February 11, 1993, Hessel's status in the United States remained that of a "non-immigrant" alien of Mexico. On January 21, 1993, Hessel filed her Application for Permanent Residence with the United States Immigration and Naturalization Service. That application was approved on February 11, 1993 and her Mexican citizenship was consistent with her non-immigrant alien status prior to that date. Prior to December 31, 1992, Hessel's status with respect to her United States federal income tax was that of a "non-resident alien," and she did not file or pay United States taxes before 1993. She did pay taxes in Mexico. Her first quarterly tax return in the United States was submitted after February 11, 1993 when she became a permanent resident, but she still is a citizen of Mexico. Before his marriage to Hessel, Black acquired property in Jackson on which to construct a house. Hessel subsidized the three million dollar cost of construction through transfers of funds between 1980 and 1982. Both Black and Hessel kept clothing and personal belongings in the house in Wyoming year round. After completion of the house, Hessel spent summer and Christmas vacations in Jackson. According to the parties' Stipulation of Facts, Jackson became the primary residence of the parties. Black and Hessel also traveled nationally and internationally for business and pleasure, and they maintained a home in Mexico City and apartments in New York and Munich, Germany.

Under the terms of the Separation Agreement, Hessel was entitled to occupy the home in Jackson from July 1 through Labor Day, from 1991 through 1994 and also from December 15 through January 15 from 1991 through 1995. The modification to the Separation Agreement in December of 1992 gave Black legal title to the Jackson home.

The Stipulation of Facts included the fact that Hessel decided to become a permanent United States resident in the fall of 1992, and she changed her residence to Wyoming by December 31, 1992. She made an agreement to sell her home in Mexico in December of 1992, and that sale was consummated on February 26, 1993. During 1992, Hessel joined the Teton Pines Country Club, opened a safety deposit box and two bank accounts at the Jackson State Bank, and looked for land on which to build a new home. Hessel attempted to obtain a Wyoming driver's license, but she was prohibited from doing so because she had not yet received her green card from the Immigration and Naturalization Service. During the months of January and February of 1993, she shipped her belongings from Mexico to Jackson where she stored them until August of 1994 when she moved into her new house.

In his argument in this appeal, Black maintains, in contrast to the stipulated facts, that Hessel considered New York her primary United States residence. His factual contentions include the employment by Hessel of several individuals to perform household duties in the New York apartment between January 1 and June 16 of 1993. She did not employ anyone in Wyoming. She kept her jewelry, artwork, china, silver, and linens in New York, and of her $42 million in liquid assets, all of it was held or invested outside of Wyoming, except for $5,000.00 in a checking account at the Jackson State Bank. Her personal assistant maintained Hessel's bank and investment files in New York, and prior to June 16, 1993, she continued to serve on boards and committees of art and cultural institutions primarily in New York. Black asserts that in the four months prior to the filing of her Complaint for Divorce, Hessel spent seventy-nine days in New York and the remainder of the time traveling, spending only eight days in Wyoming.

Following the separation, Hessel continued to spend summer and Christmas vacations in Jackson. From February 11, 1993 to June 16, 1993, she did not own an interest in the Jackson home nor did she have any legal right to use or occupy it under the Separation Agreement. She did not lease or own

another home in Wyoming. At that time, however, she began changing her address on financial and legal documents to a post office box in Moose, Wyoming or to the physical address of Black's house. She used the address of Black's home when she filed her first quarterly income tax return for 1993.

On March 23, 1993, Hessel made an offer to purchase property at Teton Pines for $220,000.00 and a warranty deed to the property was recorded on July 29, 1993. She also purchased the adjoining lot. Her income tax return listed Moose as her address, and after receiving her green card, she obtained a Wyoming driver's license. She was not eligible to vote in the United States because she still was an alien, not a citizen.

Black's contentions are summarized by his assertion that during the sixty days immediately preceding the filing of the Complaint for Divorce on June 16, 1993, Hessel was only in Wyoming for forty-eight hours, from May 12 to May 14, 1993. The Stipulation of Facts, however, included the fact that Hessel visited Jackson between March 11 through March 17, 1993 as well. Hessel did maintain personal belongings in Jackson such as clothes, books and artwork, but Black insists that Wyoming could not be Hessel's domicile for purposes of the divorce, and the district court lacked jurisdiction to enter the Decree of Divorce.

The record demonstrates some significant inconsistencies with Black's argument that Hessel did not intend to be a resident of Wyoming. In an Affidavit of Support to the Immigration and Naturalization Service on January 28, 1993, Black said under oath that Hessel resided in Jackson. Under oath, the parties provided an explanation of the arrangement they had made to share the use of the home in Jackson. Black did not refute any of this information during the hearing on residency on August 26, 1997, which led to the district court's conclusion that Hessel was a resident of Wyoming. During March of 1993, in the course of discussions that occurred about the divorce, Black advised Hessel that she should obtain the divorce in Wyoming since they both lived in Wyoming. Black then contacted Hessel's divorce attorney, and they discussed certain procedural

aspects of the divorce. Hessel's attorney referred Black to another attorney in Jackson, and Black later consented to the entry of a default divorce if the Separation Agreement was incorporated in the Decree of Divorce by the court. At the default divorce hearing on August 13, 1993, the district court entered a Decree of Divorce along with Findings of Fact and Conclusions of Law.

■ The contentions of Black offer a fascinating prospect for a discussion of the concept of residence as it is found in our Wyoming divorce law. Wyo. Stat. Ann. § 20–2–107. In Wyoming, the question of residence for purposes of the statute is one of fact, and the court is obligated to accept the evidence of the prevailing party as true. *Hensley v. Hensley,* 896 P.2d 115; 115 (Wyo. 1995); *Clauss v. Clauss,* 459 P.2d 369, 371 (Wyo.1969). In *McDougall,* 961 P.2d at 384, the court suggested, without deciding, that "resided" implicates the concept of domicile. It was noted that a change of domicile must be made with the intention of making the new place of residence a permanent residence. It has long been the rule in Wyoming, however, that the residence of the wife is that of her husband, which is the place of the matrimonial domicile. *Duxstad v. Duxstad,* 17 Wyo. 411, 100 P. 112, 113 (1909). The complexity may be compounded by what the court said in *Wyoming Ins. Guar. Ass'n v. Woods,* 888 P.2d 192, 198 (Wyo.1994):

Wyoming has recognized a distinction between the "residence" of a person and the "domicile" of a person. *State ex rel. School Dist. No. 1, Niobrara County v. School Dist. No. 12, Niobrara County,* 45 Wyo. 365, 376, 18 P.2d 1010, 1013 (1933). "Residence" is given the more liberal interpretation. *Id.* "Domicile" is narrowly defined: " 'the domicile of a person is the place where he has voluntarily fixed his habitation with a present intent to make it either his permanent home or his home for the indefinite future.' " *Boswell v. South Carolina Ins. Co.,* 353 Pa.Super. 108, 509 A.2d 358, 362 (1986) (*quoting In re McKinley's Estate,* 461 Pa. 731, 337 A.2d 851, 853 (1975)). As a result of this narrow definition, a person may have a "domicile" in only one place at a time; however, the

same person may be a "resident" of several places at the same time. *Casolari v. Pipkins*, 253 Ill.App.3d 265, 191 Ill.Dec. 580, 582, 624 N.E.2d 429, 431 (1993); *In re Yap*, 39 Misc.2d 835, 241 N.Y.S.2d 976, 979 (N.Y.Sup.1963); *Switzerland General Ins. Co. v. Gulf Ins. Co.*, 213 S.W.2d 161, 163 (Tex.Civ.App.1948).

As interesting as these questions may be, we conclude that our decision is controlled by the *McDougall* case. The precise holding there was that a party who remarried following the divorce was estopped from attacking the decree for lack of subject matter jurisdiction on the ground that the former wife was not a resident of Wyoming when she filed the divorce complaint. We said:

> The doctrine of estoppel does not validate an otherwise invalid decree. Rather, it imposes a personal disability on the party challenging the decree. It precludes the party from presenting evidence to overcome the presumption of regularity. The application of estoppel in divorce actions has been synthesized by Professor Homer Clark in *Estoppel Against Jurisdictional Attack on Decrees of Divorce*, 70 Yale L.J. 45, 56–57 (1960) as follows:
>
> 1) The attack on the divorce is inconsistent with prior conduct of the attacking party. 2) The party upholding the divorce has relied upon it, or has formed expectations based upon it. 3) These relations or expectations will be upset if the divorce is held invalid.

The estoppel principle has been recognized by the Restatement (Second) of Judgments § 66 (1982) and by case law. *Brockel v. Brockel*, 80 S.D. 547, 128 N.W.2d 558, 561 (1964) provides:

> Where a decree of divorce is void, which we do not intimate in this case, parties may be estopped to assert its invalidity to their own advantage if they have enjoyed its fruits. The most common case is where the defendant acts upon the decree by remarrying. Relief is denied in such instances almost without exception. * * * In *Patterson v. Patterson*, 164 Kan. 501, 190 P.2d 887 [ (1948) ], the husband obtained a divorce and the wife later remarried. She

attempted to set aside the divorce. The court said the wife had treated the divorce "as valid on at least three important occasions (by remarrying). It is well settled that one who takes the benefit of the decree is estopped thereafter from questioning its validity."

*See also Sariego v. Sariego*, 231 Ark. 35, 328 S.W.2d 136, 138 (1959) (relief denied where wife allowed the entry of a default divorce against her and did not bring the action to set aside the divorce until after the husband had remarried); *Wendell v. Wendell*, 111 Cal.App.2d 899, 245 P.2d 342, 344 (1952) (a wife, having remarried, was estopped from asserting invalidity of her divorce); and *In re Marriage of Gryka*, 90 Ill.App.3d 443, 45 Ill.Dec. 820, 413 N.E.2d 153, 155 (1980) (one who remarries may be estopped from challenging the validity of a divorce decree).

We accept the principle of estoppel as a means of recognizing a personal disability upon the husband provided that the evidence adduced is sufficient to establish prima facie the wife's Wyoming domicile. This principle does no violence to *Emery v. Emery*, 404 P.2d 745 (Wyo.1965), because evidence sufficient to meet the requirements of estoppel was wanting in *Emery*.

*McDougall*, 961 P.2d at 384–85.

■ Under the doctrine of estoppel by acceptance of benefits, a party who knowingly accepts benefits from a decree of divorce is precluded from denying the validity of that decree. *Morgan v. Morgan*, 171 Ark. 173, 283 S.W. 979, 980 (1926). *McDougall* addressed the doctrine of estoppel by acceptance of benefits in the context of re-marriage in reliance on a decree, but the doctrine is not limited to re-marriage. In *Miller v. Miller*, 88 Idaho 57, 396 P.2d 476, 477–78 (1964), the parties entered into a property settlement and maintenance agreement in connection with a divorce. Approximately one year after the divorce, the husband stopped making payments, and the wife sought to recover them. *Id.* at 478. The husband contended that the agreement was unenforceable for two reasons. He first contended that the statute did not authorize the payment of alimony to which he had agreed,

and secondly, he asserted he was not capable of exercising the requisite judgment because he relied solely on the advice of his wife's counsel in making his decision about the agreement. *Id.* at 478. The Supreme Court of Idaho held that the husband could not argue that the entry of the decree was against public policy because "having accepted the benefits of such decree, he is now estopped from attacking it." *Id.* at 478. The court also ruled that at the time of execution of the agreement, the husband, who was "employed in a responsible governmental position which required skill and ability * * * was competent and knew the nature of the contract and its terms." *Id.* at 480.

The North Carolina Court of Appeals, in *Lowry v. Lowry,* 99 N.C.App. 246, 393 S.E.2d 141 (1990), addressed an issue very similar to the one posed in this case. There, the wife maintained she had not been adequately apprised of the terms of the final settlement, which she asserted also was documented inadequately. *Id.* at 142. The North Carolina Court of Appeals held that Mrs. Lowery's acceptance of benefits from a Separation Agreement for nearly three years ratified the contract and she was estopped from claiming that the settlement was not authorized. *Id.* at 145. In another similar case, the Court of Civil Appeals of Alabama ruled that a wife who was represented at the time of a consent to modification of a divorce decree and had accepted benefits from the judgment of modification was estopped from claiming the judgment was void. *Saxon v. Saxon,* 416 So.2d 1029, 1031 (Ala.Civ.App.1982). The wife in that case had signed the divorce documents, but then challenged the divorce decree under Rule 60(b) of Alabama Rules of Civil Procedure. As a product of that challenge, the parties entered into the "consent modification," which was confirmed by the court. In a later motion to dismiss, addressed to the original decree, the wife had claimed she was not represented by counsel. *Saxon,* 416 So.2d at 1030–31.

▆ Neither Black nor Hessel has remarried, but the record demonstrates that Black accepted benefits from the Separation Agreement, which was incorporated in the Decree of Divorce, for nearly three years. His challenge of the Decree of Divorce is inconsistent with his prior conduct, and he is precluded, by the doctrine of estoppel by benefit, from challenging the Decree of Divorce. Black's allegations are that Hessel improperly procured the divorce and that he was not adequately advised and represented because the same firm represented both parties at the time the Separation Agreement was prepared and executed. He suggests that this prevented his assent to the Separation Agreement from being voluntary, and he sought to vacate the Decree of Divorce or modify its terms because of "egregious conduct" by Hessel's counsel. Black previously had acknowledged, however, that Hessel's counsel was representing her interests and not his prior to execution of the Separation Agreement. The record also is clear that Hessel's counsel refused to proceed with the divorce case unless Black was represented by Wyoming counsel. Black was represented at the time the Decree of Divorce was entered, and it is difficult to understand his contention that he was inadequately advised of the facts of Hessel's representation by counsel to the end that he involuntarily entered into the Separation Agreement. We hold that Black is estopped from claiming the Decree of Divorce to be void because of the benefits he received from it.

Hessel also relied upon the Separation Agreement as it was adopted in the Decree of Divorce, and she has complied with it. She continues to make annual charitable contributions to a private college; has transferred shares of stock to that college; has transferred an interest to a limited partnership to family members; and has built her home in Jackson, acting in reliance on the agreement. If the distribution of assets were to change as Black contends it should, there would be substantial personal loss to Hessel, and charitable contributions and other gifts would have to be unraveled.

Black's contentions indeed seem spurious in light of the fact he is neither a novice nor unsophisticated in business or legal transactions. Black has generated a significant income, nine million dollars, from stock ownership; he accepted the conveyance of the Jackson property from Hessel's company;

and he conveyed portions of his property in Jackson to the Black Family Trusts and a local conservancy foundation. He was represented by counsel when the Decree of Divorce was entered, and he had received the benefits from the Decree of Divorce incorporating the Separation Agreement for nearly three years. He should not be permitted to claim he was inadequately apprised of its terms and, therefore, the judgment is void. We reject his contention that the district court erred in applying the principle of estoppel by benefit, and we affirm the ruling of the district court that the Decree of Divorce was valid.

 We turn then to Case No. 98–228 involving the attorney fees and costs awarded to Hessel. The Separation Agreement between the parties contained this language:

NINTH: *COST OF ENFORCEMENT.* If either party shall default in the performance of any of the provisions of this Agreement, and if the other party shall institute, and prevail in, legal proceedings to enforce the performance of such provisions by the defaulting party, then the defaulting party shall pay to the other party the costs and expenses incurred by the other party (including reasonable attorney's fees) in connection with such proceeding, as well as any additional tax assessed against the other party by reason of such payment. The provisions of this Article shall be in addition to and without prejudice to any other rights and remedies to which the aggrieved party may be entitled.

We perceive Black's efforts to attack the Decree of Divorce as manifesting breach which constitutes default. The Separation Agreement furnished ample authority for the district court to award attorney fees to Hessel. We previously have established the proposition that Black voluntarily entered into this agreement that provided for the award of fees. In addition, fees and costs are authorized under Wyo. Stat. Ann. § 20-2-111, and they rest within the sound discretion of the district court which we do not overturn absent a clear abuse of that discretion. *Rocha v. Rocha,* 925 P.2d 231, 234 (Wyo.1996).

In a recent divorce case, we explained the abuse of discretion in this way:

We recently clarified the definition of abuse of discretion when we said the core of our inquiry must reach "the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* (quoting *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236, 1238 (1985)); *Basolo [v. Basolo ],* 907 P.2d [348] at 353 [ (Wyo. 1995) ]. We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

*Thomas v. Thomas,* 983 P.2d 717, 719 (Wyo. 1999).

 The purpose of attorney fees in a divorce case is to assist the party, as necessary, so that the party can carry on or defend the action. *Hendrickson v. Hendrickson,* 583 P.2d 1265, 1268 (Wyo.1978); *Prentice v. Prentice,* 568 P.2d 883, 886 (Wyo.1977). The party seeking to recover attorney's fees bears the burden of demonstrating the reasonableness of the fees and must submit an itemized bill reflecting the time and rate charged. *Pekas v. Thompson,* 903 P.2d 532, 536 (Wyo.1995) (*quoting Hinckley v. Hinckley,* 812 P.2d 907, 915 (Wyo.1991)). Even though Hessel and Black are both independently wealthy, the statute does not require that Hessel establish financial necessity for the award of attorney's fees and costs. *Rocha,* 925 P.2d at 234. Hessel attached an itemized list of her expenses to her Reply to Defendant's Response and Objection to Plaintiff's Bill of Costs and Attorney's Fees. That document was sufficient to establish reasonableness in light of the expenditures Black made to create his elaborate presentations in this case. Hessel's expenses under the circumstances were reasonable and necessary to a defense against the attack mounted by Black on the Decree of Divorce. We find

in this record more than sufficient information to permit the district court reasonably to decide as it did, and nothing indicates that the decision was arbitrary or capricious. In the absence of an abuse of discretion, we affirm the order awarding Hessel attorney fees and costs.

The orders attacked by Black in these appeals are both affirmed in every respect.